## SEABOARD AIR LINE RY. CO. v. CITY OF RALEIGH et al.

(District Court, E. D. North Carolina. December 11, 1914.)

### No. 354.

1. INJUNCTION ⬥85—RESTRAINING ENFORCEMENT OF MUNICIPAL ORDINANCE.
    The enforcement of a municipal ordinance, requiring a railroad corporation to remove its tracks from a street, and directing the commissioner of public works of the city to remove the tracks, if the company fails to do so, under which the city's officers will proceed summarily to remove the tracks, unless restrained, if invalid and in violation of the company's vested rights, will be enjoined, since while equity will not, except in exceptional cases, enjoin the enforcement of criminal laws or city ordinances imposing fines and penalties where rights of property are involved, and the enforcement of an ordinance will violate vested rights, injunctive relief will be awarded, especially where the enforcement will work an irreparable injury.

    [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 155, 156; Dec. Dig. ⬥85.]

2. INJUNCTION ⬥105—RESTRAINING ENFORCEMENT OF MUNICIPAL ORDINANCE.
    The enforcement of a municipal ordinance will not be enjoined if it is enforceable only by indictment for a violation thereof, as the validity of the ordinance may be tested by way of defense to the indictment.

    [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 178, 179; Dec. Dig. ⬥105.]

3. MUNICIPAL CORPORATIONS ⬥682—GRANTING RIGHT TO USE STREET.
    Under the Raleigh charter authorizing the city commissioners to keep streets, sidewalks, and alleys in good repair and clean, to establish their width, ascertain the location of those already provided, lay out and open others, and reduce the width of any of them, though a reasonable use of the streets may be granted to a public utility corporation, the commissioners had no power to grant an exclusive right in perpetuity to occupy the sidewalk with a railroad track, so as to prevent a subsequent city board from ordering the removal of such railroad track.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1467–1470; Dec. Dig. ⬥682.]

4. RAILROADS ⬥78—GRANTING OF RIGHT TO USE STREET.
    The board of aldermen of a city adopted a resolution granting a railroad company "permission" to occupy the sidewalk on the side of a street for a city block with a railroad track. A cotton compress had recently

been constructed, and the company applied for permission to build its track to furnish proper facilities for the delivery of the cotton to the compress, though the track was also used for the purpose of loading and unloading freight. The cotton compress subsequently ceased to be used. The block in question, one of the sidewalks of which was exclusively appropriated for the purpose of such track, was within a short distance of the State Capitol and other public buildings. The city had increased greatly in population during the 30 years from the adoption of the ordinance. *Held*, that the terms of the resolution were appropriate to confer a temporary revocable license, and was inappropriate to vest by grant a perpetual and exclusive use of the sidewalk, raised a reasonable doubt as to the intention of the parties which should be resolved in favor of the public for its use of the property and the soil so held, and hence the resolution did not vest in the railroad company an irrevocable property right.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 194; Dec. Dig. ☜78.]

5. RAILROADS ☜76—CONSTRUCTION—USE OF STREETS.

Revisal N. C. 1905, § 2567, authorizing railroad companies to construct their tracks across, along, or upon any street which the route of their road shall intersect or touch, provided the company shall restore the street to its former state or to such state as not unnecessarily to impair its usefulness, did not authorize an exclusive appropriation of a street or sidewalk by a railroad company assuming that the further provision of that section, requiring the assent of the city in the case of railroads "not already located in, upon, or across any streets," did not apply, especially as a street could not be restored to its former state if the track occupied its entire width.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 195, 196, 199–201; Dec. Dig. ☜76.]

6. RAILROADS ☜75—USE OF STREETS BY RAILROAD—ESTOPPEL.

No estoppel against a city could arise from a railroad company's occupation of the street with the city's knowledge and acquiescence under a resolution of the board of aldermen granting it permission to use the street, if the permission granted amounted to a revocable license, or if, being irrevocable, the board had no power to grant it.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 183–191; Dec. Dig. ☜75.]

7. RAILROADS ☜75—USE OF STREETS—PRESUMPTION OF GRANT.

A grant to a railroad company of the right to maintain a track on a street would not be presumed from lapse of time during which it had occupied the street, since limitations will not run as to streets and other property held by a city in trust for the public.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 183–191; Dec. Dig. ☜75.]

8. MUNICIPAL CORPORATIONS ☜63 — ORDINANCES — REASONABLENESS — REVIEW.

It was not ground for enjoining the enforcement of an ordinance, requiring the removal of a railroad track from a street, that the track did not unnecessarily impair the usefulness of the street, because there was sufficient space not occupied by the track, as the control of the streets was committed to the city board, and the wisdom or perpetuity of the ordinance could not be questioned in the courts.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 155, 1378, 1879; Dec. Dig. ☜63.]

In Equity. Bill by the Seaboard Air Line Railroad Company against the City of Raleigh and others, for an injunction restraining

defendants from enforcing an ordinance requiring plaintiff to remove its track from a sidewalk being a part of Salisbury street, Raleigh, N. C. Bill dismissed.

James H. Pou and Murray Allen, both of Raleigh, N. C., for plaintiff.

John W. Hinsdale, Jr., Douglas & Douglas, and Charles U. Harris, all of Raleigh, N. C., for defendants.

CONNOR, District Judge. The cause was submitted upon the bill, answer, and statement of facts agreed upon by the parties. Plaintiff is a Virginia corporation and successor to the property, rights, and franchises of the Raleigh & Gaston Railroad Company, chartered by the General Assembly of North Carolina at its session of 1835 (Laws 1835–36, c. 25). The city of Raleigh was the southern terminus of said railroad. Pursuant to the provisions of the charter, the said company constructed a track from Gaston, N. C., to Raleigh, N. C., and constructed terminals and depots, in said city, for the receipt and delivery of freight and passengers, including a freight depot and a warehouse on Halifax street between Lane and North streets, extending from Halifax street to Salisbury street, extending its tracks from the main line of the Raleigh & Gaston Railroad across Salisbury street into said depot and warehouse. During the year 1881, a cotton compress was constructed on a lot in the city of Raleigh, bounded by Salisbury, Jones, Halifax, and Lane streets, and for the purpose of delivering to, and receiving cotton from, said warehouse, and to serve the patrons of the said railroad company, and to furnish the public facilities for the delivery of cotton in car load lots, and to better perform its functions as a common carrier, the Raleigh & Gaston Railroad Company made application to the board of aldermen of Raleigh for the grant of the right, privilege, or franchise to occupy the sidewalk on the east side of Salisbury street, between Jones and Lane streets, for the purpose of constructing a track thereon. Said board of aldermen on August 5, 1881, adopted the following resolution or ordinance:

"Upon application of John C. Winder, general superintendent, the Raleigh & Gaston Railroad Company was granted permission to occupy the sidewalk on the east side of Salisbury street, between Jones and Lane streets, for the purpose of running a track."

When the track was constructed, pursuant to the permission granted by said ordinance, it was used as a public track in connection with the cotton compress in the cotton season, and was used for the purpose of loading and unloading freight for the public, without additional compensation to the railroad for its use, and for any other purpose for which the railroad company desired to use it. Since the year 1906, the cotton compress has not been used. Since that date the said track has been used exclusively for loading and unloading freight and storing empty cars engaged in inter and intra state traffic. It has been and is now used by the merchants of the city of Raleigh and by the public and, on account of its location, is convenient for the said purpose. The right to maintain said track, as it is now placed and

used on Salisbury street, is of value to plaintiff, exceeding $3,000, exclusive of cost herein.

The track has been maintained and operated by the Raleigh & Gaston Railroad Company and the plaintiff, its successor, since 1881, with the knowledge and permission of the officers and representatives of the city of Raleigh. The plaintiff is the sole owner and occupant of the block of land in said city bounded on the west by Salisbury street, on the north by Lane street, on the east by Halifax street, and on the south by Jones street, and is the sole owner and occupant of the block in said city next adjacent to said block and to the north thereof, bounded on the west by Salisbury street, on the north by North street, on the east by Halifax street, and on the south by Lane street. The two blocks are used by the plaintiff for the purpose of conducting its business exclusively. Salisbury street is 43 feet wide between curbs at that point at which the track is located on the sidewalk, and, in addition thereto, there is located a sidewalk on the west side of the street 13 feet wide. The portion of the sidewalk on the east side of the street occupied by plaintiff's track is 10 feet wide. The street and the sidewalk on the west side thereof are available to and are used by the public. In constructing a new freight station two years ago, it was necessary for the Seaboard Air Line Railway Company to make an excavation at the corner of Jones and Salisbury streets of about 8 feet, extending northwards along Salisbury street. The tracks constructed in connection with said freight station are in this excavation, and the freight station is between these tracks and Halifax street. They cannot be used as team tracks, and the other team tracks of plaintiff are on Lane street, which is one block north of Jones street, a distance of 420 feet. The said track on Salisbury street extends from Jones street to Lane street. The southern end of the track on Salisbury street is one block north of the State Capitol, a distance of 420 feet. With the track as it is now laid and used, there is no sidewalk on the east side of Salisbury street, between Jones and Lane streets, for use by pedestrians. Within the two years last past plaintiff has built on the site upon which the compress stood, and immediately to the east of said track, a commodious freight warehouse, with an approach to the same by wagons from the east on the side of the building opposite said side track, with two tracks between said depot and the east line of the sidewalk in question, and, in addition thereto, has constructed several team tracks to the north of said warehouse.

At their meeting on June 10, 1913, the defendants commissioners of the city of Raleigh, after hearing the matter, and against the protest of plaintiff, adopted a resolution ordering the removal of the track constructed and maintained by plaintiff on the sidewalk on the east side of Salisbury street, between Jones and Lane streets, being the track described in the resolution or ordinance of August 5, 1881. By said resolution the commissioner of public works of the city of Raleigh was directed, if plaintiff failed to do so, to remove said track. Certain private laws are set out or referred to in the bill and are to be considered as in evidence. A preliminary injunction was issued and the cause heard upon the prayer for a permanent injunction re-

straining defendants from removing said track or otherwise enforcing said resolution or ordinance of June 10, 1913. It is conceded that the plaintiff is entitled, by succession, to such rights, privileges, and franchises as vested in the Raleigh & Gaston Railroad Company by virtue of its charter and amendments thereto and the ordinance of August 5, 1881, or which it may, upon the facts herein set out, have otherwise acquired.

[1, 2] While it is settled by abundant authority that courts of equity will not, save in exceptional cases, enjoin the enforcement or execution of the criminal law or of city ordinances imposing fines and penalties for their violation, it is also settled that where rights of property are involved, and the enforcement of such ordinances violates vested rights, injunctive relief will be awarded, especially where such enforcement will work irreparable injury. In Owensboro v. Cumberland Telephone Co., 230 U. S. 58, 33 Sup. Ct. 988, 57 L. Ed. 1389, the court enjoined the enforcement of an ordinance revoking a grant of a franchise to occupy the streets of a city. The power of the court to enjoin the enforcement of an ordinance regarding railroad tracks in streets was recognized in A. C. L. R. R. Co. v. Goldsboro, 232 U. S. 548, 34 Sup. Ct. 364, 58 L. Ed. 721. The refusal on the part of defendant to obey the ordinance subjects it to indictment for a misdemeanor. Rev. § 3702. If no other mode of enforcement was prescribed by the ordinance, the court would find no authority for interfering. The validity of the resolution or ordinance could be tested by way of defense to an indictment. It is conceded that defendant's officer, unless restrained, will proceed summarily to remove the track. If plaintiff's contention, upon the merits of the controversy, are sustained, it would seem that its right should be protected by injunction.

[3, 4] It is conceded that plaintiff is a public utility corporation, and such right as it has acquired to occupy the sidewalk is used in the prosecution of its business as a common carrier. The charter of the city of Raleigh, at the date of the ordinance, of August 5, 1881, and since that time, confers upon its commissioners power to keep clean and in good repair the streets, sidewalks, and alleys, to establish the width and ascertain the location of those already provided, and lay out and open others, and may reduce the width of all of them. It may be conceded that this language confers upon the governing board the usual powers granted to municipal authorities in regard to the use of the streets, including the power to grant to quasi public corporations, such as the plaintiff, the right to a reasonable use of the public streets not inconsistent with the right of the public. Griffin v. Railroad, 150 N. C. 312, 64 S. E. 16. It may be further conceded that when such right of user is granted, within the power of such authorities, and such grant is accepted and acted upon, a property right vests in the grantee of which it may not be deprived otherwise than by due process of law. Owensboro v. Cumberland Telephone Co., supra, where these propositions are decided and the authorities cited. Notwithstanding these concessions, two questions remain open for decision. Did the ordinance of 1881, construed in

the light of then existing conditions, and the reasons inducing its passage, grant to plaintiff's predecessor in title a right to be enjoyed in perpetuity to appropriate to its use, by locating and maintaining a track thereon, to the exclusion of all others, the sidewalk for any and all purposes, connected with the operation of its freight traffic, and, if so, was such grant within the power of the board of commissioners to make? Mr. Justice Lurton in the Cumberland Telephone Co. Case, supra, says:

"The grant by ordinance to an incorporated telephone company, its successors and assigns, of the right to occupy the streets and alleys of a city with its poles and wires, for the necessary conduct of a public telephone business, is a grant of a property right in perpetuity, unless limited in duration by the grant itself or as a consequence of some limitation imposed by the general law of the state, or by the corporate powers of the city making the grant."

The power to grant a reasonable use of the streets of Raleigh to a public utility corporation is sustained in Moore v. Power Co., 163 N. C. 300, 79 S. E. 596. The title to the soil in the streets of the city is in the state, but the power to subject them to the use of the municipality and its inhabitants is in its governing board, supra. It is a well-settled rule of construction, applied to grants of public property, which has been applied to grants of the use of streets, that:

"Where special street privileges and franchises are granted, which interfere with the authority of the municipality to control its streets and with the free use thereof by the public, the grant must be construed strictly in favor of the public and against the grantee." 27 Am. & Eng. Enc. 154.

The soundness, if not necessity, for this salutary rule is manifest. The resolution or ordinance does not use appropriate or usual words found in grants, as distinguished from a license. In the Cumberland Telephone Co. Case, supra, the right to erect and maintain poles and wires is "granted." So in Pikes Peak Power Co. v. Colorado Springs, 105 Fed. 1, 44 C. C. A. 333, the right to use the streets for the purpose of stringing wires was "granted" to the company. In construing the language of the ordinance of 1881, for the purpose of ascertaining the intention of the parties, the purpose for which the permission to occupy the sidewalk was given should be kept in view. A cotton compress had recently been erected on the Raleigh & Gaston Railroad Company. It is proper to take notice of the fact that, in moving bales of cotton either to or from the compress, the distance and physical conditions are of essential importance in regard to cost and convenience in operating the compress. Again, as is well known, the compress would ordinarily be operated only a portion—not exceeding one-third—of the year. The cost of laying a spur or side track for the distance required on the sidewalk was, as compared with its value, small. It is doubtful whether the considerations which induced the commissioners to give to the Raleigh & Gaston Railroad Company permission to occupy, by laying its track over, the sidewalk, for the purpose of enabling it to successfully operate the compress, would have been sufficient to move them to make a grant of a franchise to do so, for all purposes, in perpetuity. Certainly the terms used, so appropriate to confer a temporary, revocable

license, and so inappropriate to vest, by grant, a perpetual and exclusive use of the sidewalk, are sufficient to raise, in the mind, a reasonable doubt as to the intention of the parties which upon the principle uniformly applied in such cases, should be solved in favor of the public, for whose use the property in the soil was held. Minturn v. Larue, 23 How. 435, 16 L. Ed. 574. The principle is clearly stated by Mr. Justice Clifford in Holyoke Co. v. Lyman, 15 Wall. 500, 512 (21 L. Ed. 133):

"Wherever privileges are granted to a corporation, and the grant comes under revision in the courts, such privileges are to be strictly construed against the corporation and in favor of the public, and that nothing passes but what is granted in clear and explicit terms."

The language of the court in Water Co. v. Knoxville, 200 U. S. 22, 26 Sup. Ct. 224, 50 L. Ed. 353, strongly states the principle and expressly applies it to city ordinances affecting the rights of the public in streets. Mr. Justice Harlan, after citing many cases, says:

"It is true that the cases to which we have referred involved, in the main, the construction of legislative enactments. But the principles they announce apply with full force to ordinances and contracts by municipal corporations in respect to matters that concern the public. The authorities are all agreed that a municipal corporation, when exerting its functions for the general good, is not to be shorn of its powers by mere implication. If by contract or otherwise it may, in particular circumstances, restrict the exercise of its public powers, the intention to do so must be manifested by words so clear as not to admit of two different or inconsistent meanings."

It will be observed that in Owensboro v. Cumberland Telephone Co., supra, relied upon by plaintiff, the language of the ordinance, under which the corporation claimed the franchise, is free from ambiguity. The telephone company was "granted the right to erect and maintain its poles in the streets." It is also provided that "nothing in the ordinances should be construed as an exclusive right to said company to erect poles, etc.," and, by section 4 of the ordinance, certain duties and obligations are assumed by the corporation, constituting a valuable consideration, inuring to the benefit of the citizens of the city, for the grant of the franchise, thus giving to the ordinance a contractual character, within the power of the commissioner to make. It will be also noted that Judge Lurton, in sustaining the ordinance, says:

"Nor did it undertake to grant an exclusive right. Express power to grant an exclusive street franchise has generally been held essential."

He says that, as the grant was not exclusive, the court was not called upon to deal with that question.

If it be conceded that by the ordinance of August 5, 1881, the commissioners undertook to grant to the Raleigh & Gaston Railroad Company, and its successors, the exclusive right, in perpetuity, to occupy and maintain a track, for all such purposes as it or they deemed proper in the prosecution of their business as common carriers, over the sidewalk on the eastern side of Salisbury street, the question is presented whether they were vested by the charter of the city, which constituted the grant of legislative authority in that respect, with

the power to do so. Conceding that the power granted the commissioners, in regard to the use of the streets, includes the power to "regulate" such use, and giving to this language the interpretation given it in Cumberland Telephone Co. Case, supra, and in Moore v. Power Co., supra, the question is yet open whether the power claimed by plaintiff is conferred. In State v. Railroad, 141 N. C. 736, 53 S. E. 290, the Supreme Court of this state held:

"In the absence of an express power in the charter of a city to grant a permanent easement in a street, a license granted to a railroad company to lay tracks and operate trains in a street cannot be construed as a grant of a permanent easement."

After citing authorities, it is said:

"The general rule to be extracted from the authorities is that the legislative power vested in municipal bodies is something which cannot be bartered away in such manner as to disable them from the performance of their public functions."

· While the Supreme Court of this state has, in a number of cases, sustained the power of the commissioners or other governing body of municipalities to grant to public service corporations the right to place their tracks, poles, wires, pipes, etc., in, under, and along the public streets, no case has been found in which the power has been claimed to grant an exclusive and perpetual use of a street or sidewalk to such corporations. Griffin v. Railroad, 150 N. C. 312, 64 S. E. 16, relied on by plaintiff, falls far short of sustaining such power. There the commissioners granted the right to the defendant to lay its track along the street. There is no suggestion that the track occupied the entire street, to the exclusion of pedestrians, or persons passing in vehicles. The plaintiff, as an abutting owner, sought to enjoin the defendant from exercising the privilege granted. For manifest reasons, and upon well-settled principles, the court refused to grant the injunction. The grounds upon which that and the cases cited in the opinion of the Chief Justice are based are not applicable here. That the occupation of the sidewalk by plaintiff's track excludes all other persons from passing over the sidewalk otherwise than by walking over the track, when not appropriated by plaintiff's freight cars, is conceded. The extent of the claim asserted by plaintiff, for all practical purposes, vests in it the absolute and exclusive use of the sidewalk. This claim is based upon an ordinance adopted by the commissioners giving "permission" to its predecessor in title to occupy the sidewalk, without any limitation in respect to time, and without any valuable consideration to support a contract, or the use of any contractual language. The permission was given to meet a condition and promote a purpose, temporary in character, which has ceased to exist. If plaintiff's contention is sustained, the entire sidewalk, for 420 feet on one of the principal streets of the capital city of the state, in a short distance of the state house and other public buildings, extending from Jones to Lane streets, is appropriated to the exclusive use of the plaintiff. The claim is based upon the language of an ordinance adopted 30 years ago, to meet a temporary condition, during which time the city has increased very greatly in population. The

claim invites careful consideration, and its successful maintenance demands strong reasons or controlling authority. Giving to the numerous decided cases and the language used by the courts due weight, in the light of the facts upon which they are based, I am constrained to reach the conclusion that, by a fair construction, the ordinance of August 5, 1881, interpreted in the light of the condition under which it was used, and the purpose which the parties had in view, does not vest in the plaintiff the property right in the use of the sidewalk for which it contends, and that, if such construction is permissible, the commissioners were not vested by the Legislature with power to make such exclusive, perpetual grant of the sidewalk to the Raleigh & Gaston Railroad Company, which prevents the present governing board, in which the power is vested and upon which the duty is imposed to control and regulate the use of the sidewalk for the benefit of the public, from making and enforcing the ordinance of June 10, 1913.

[5] Plaintiff relies upon the provisions of the state statute in force at the date of the ordinance of 1881, giving to all railroad companies the right to construct their tracks "across, along, or upon any * * * street * * * which the route" of their "road shall intersect or touch," provided the company shall restore the street "thus intersected or touched to its former state or to such state as not unnecessarily to have impaired its usefulness." Rev. § 2567. Conceding, for the reasons assigned, pro hac vice, that the plaintiff has the rights and privileges conferred by this section, free from the limitation in regard to "the assent of the corporation," it is confronted with the duty imposed by the statute to restore "the * * * street * * * thus intersected or touched to its former state," etc. It is doubtful whether the language of the section can be construed to authorize the exclusive appropriation of the street. The sidewalk is a portion of the street appropriated to the use of pedestrians. To construe the grant of the right to construct its road "across, along, or upon" a street, always of much greater width than a railroad track, and the cross-ties, as a grant of the right to occupy the entire street or sidewalk, is not permissible in the light of the recognized rule of construction of such grants of power. How is it possible to restore the street to "its former state" if the track occupies its entire width? Statutes must be given a reasonable construction.

[6-8] Plaintiff further contends that by reason of the long time elapsing since the occupation of the sidewalk, with the knowledge and acquiescence of the defendants, they are estopped from asserting a claim to the use of the sidewalk, for the use of the public, and for this contention quotes the language of Judge Dillon:

"If the municipality has the power to grant such right or franchise, and a corporation, believing and assuming that it has the consent or grant of the municipality, has, with the knowledge of the proper municipal authorities, proceeded to exercise the right or franchise, and has constructed, maintained, and operated its works and appliances in the city streets, the municipality will, in a proper case, be estopped by the acts and conduct of its officers and representatives in knowingly permitting and acquiescing in the use and occupation of the streets from asserting the invalidity of the grant of the franchise, at least so far as its failure to pass an ordinance or take the steps necessary to effectuate the grant." Mun. Corp. 1242.

The difficulty with which plaintiff is met in invoking the principle thus announced is found in the absence of the power in the corporation to grant the alleged right or franchise. If the power existed, the right is granted; if it did not exist, the plaintiff has, at all times, maintained a nuisance by an unlawful obstruction of the sidewalk, and it is clear that the municipality is never estopped from abating a public nuisance. Construing the ordinance of August 5, 1881, as a revocable license, the plaintiff lawfully occupied the sidewalk until such license was revoked, and of course no estoppel can accrue, under this view. Plaintiff, in another form, asserts the right to continue the occupation of the sidewalk by averring that, by reason of the lapse of time since the passing of the ordinance, a grant will be presumed. This, under our statutory system, by which title is acquired by lapse of time, is but a plea of the statute of limitations, and is met by the language of the court in Turner v. Com'rs, 127 N. C. 153, 37 S. E. 191:

"As to streets * * * and other property which a municipal corporation may hold in trust for the public use, without power to alternate, it is true that no statute of limitations can run." Moose v. Carson, 104 N. C. 431, 10 S. E. 689, 7 L. R. A. 548, 17 Am. St. Rep. 681; Rev. § 389.

The occupation of the sidewalk, under the license, was not adverse until the passage of the ordinance of June 10, 1913. To the suggestion that the occupation of the sidewalk on the eastern side of Salisbury street does not unnecessarily impair the usefulness of the street, because there is a space of 43 feet between curbs and 13 feet sidewalk on the western sidewalk, it is sufficient to say that the control of the streets, in these respects, is committed to the board of commissioners of the city and not to the courts. If the board has the power to pass the ordinance of June 10, 1913, requiring the plaintiff to remove the track from the sidewalk, it is neither the province nor within the power of the court to question its wisdom or propriety. It may not be improper, however, to say that in the light of the facts agreed upon and physical conditions, of which it is impossible to be ignorant, and the contention seriously made and ably pressed by plaintiff, the wisdom of the action of the commissioners for the preservation of the rights of the public committed to their care is very manifest. The questions presented and argued are, in many respects, of first impression in this state, and their correct solution of much interest to the public and public service corporations, whose business requires the use of the public streets. I concur in the opinion of the Supreme Court that:

"The city clearly possesses the statutory right to assent to the use of the street by the railroad company. This is often a most essential power, necessary to be used for the benefit of the people of the city."

I am further of the opinion that in the absence of an express legislative grant, the terms of which are free from doubt or ambiguity, the municipal authorities are not authorized to grant to a public utility corporation a franchise to occupy and appropriate the exclusive use of a street or sidewalk to be enjoyed in perpetuity. Such power was

not granted to the board of commissioners of the city of Raleigh by the charter existing at the time the resolution or ordinance, giving permission to the Raleigh & Gaston Railroad Company to occupy the sidewalk on Salisbury street, was adopted, August 5, 1881.

The only relief sought being injunctive, the plaintiff's bill will be dismissed, and the defendants will recover their cost.