L. B. McCORMICK, TRADING AS McCORMICK VENDING MACHINE COMPANY, v. J. KNOTT PROCTOR, SHERIFF OF PITT COUNTY, AND G. A. CLARK, CHIEF OF POLICE OF THE CITY OF GREENVILLE, N. C.

(Filed 2 February, 1940.)

1. **Appeal and Error § 40a—**

   Ordinarily, when there are no findings of fact in the record it will be presumed that the court found facts supporting its judgment, but when the record discloses that the court refused to hear evidence and find facts on a material point, the presumption cannot be indulged.

2. **Injunctions § 7—**

   The general rule is that courts of equity will not interfere with the enforcement of the criminal laws of the State, but will remit the person charged to setting up his defense or attacking the constitutionality of the statute in a prosecution thereunder.

3. **Gaming § 2b—**

   Sheriffs, constables and police officers are authorized by statute, Michie's Code, 4435, to seize and destroy all slot machines not expressly permitted by section 130, chapter 158, Public Laws of 1939, and may hold such machines as evidence for criminal prosecutions under the statute.

4. **Injunctions § 7—**

   As an exception to a general rule, equity will interfere with the enforcement of a criminal law when injunction is necessary to protect effectually property rights and to prevent irremedial injuries to the rights of persons.

5. **Injunctions §§ 7, 11—Held: Court should have found whether slot machines were illegal in determining plaintiff's right to enjoin officers from interfering with his business.**

Plaintiff, the owner of certain slot machines which had been seized by officers of the law, instituted this action to restrain the officers from interfering with the operation of the said machines, alleging that plaintiff had paid State and county licenses thereon and that the machines were lawful under the provisions of section 130, chapter 158, Public Laws of 1939, and that if defendants were not restrained plaintiff would be forced out of his lawful business. The court dissolved the temporary restraining order theretofore issued on the ground that it was without jurisdiction to interfere with the enforcement of the criminal laws of the State in any event, and refused to hear evidence or to find facts as to whether the machines in question were lawful. *Held:* It was error for the court to dissolve the temporary order without finding whether the machines were lawful, since in the absence of such finding the Supreme Court is unable to determine whether the case falls within the general rule that courts of equity will not interfere with the administration of the criminal laws of the State or whether it comes within the exception to that rule that the enforcement of a criminal law may be enjoined when necessary to protect constitutional rights and prevent irremedial injury.

STACY, C. J., concurring.

BARNHILL and WINBORNE, JJ., join in concurring opinion.

APPEAL by plaintiff from *Frizzelle, J.,* at Chambers in Snow Hill, N. C., 16 September, 1939. From PITT. Error and remanded.

The plaintiff in this action seeks to restrain the defendants, sheriff of Pitt County, N. C., and the chief of police of the city of Greenville, N. C., from interfering with certain slot machines in his possession, contending that taxes have been paid on the machines and they are legal slot machines. The prayer for relief is as follows: "(1) That the defendants, sheriff of Pitt County and chief of police of the city of Greenville, their officers, deputies, agents, employees and attorneys, be restrained and enjoined from in any wise interfering with the operation of any of plaintiff's machines described in the petition anywhere within the limits of the city of Greenville or county of Pitt, and that they be restrained and enjoined from removing or attempting to remove said machines from such place or places where they may be now or hereafter located. (2) For such other and further relief as may be necessary and proper, and the nature of the petition demands, and for costs."

The defendants in answer say: "That all of the machines owned, sold, rented or distributed by said plaintiff are illegal, except those machines commonly known as mechanical clerks or vending machines, which give the same fixed return each and every time a coin is placed or inserted in same and, except of course music machines. . . . Defendants admit that plaintiff owns 100 and more slot machines in Pitt County, and that same are distributed throughout Greenville and Pitt County,

but it is expressly denied that said machines have been legalized under sec. 130, of ch. 158, of the North Carolina Laws of 1939, or under any other law; and, further answering said paragraph, defendants, upon information and belief, allege and say: That the machines to which plaintiff refers are illegal, operated as gambling devices and/or are capable of being operated as gambling devices, and that plaintiff, in defiance of the law, has distributed said machines throughout Greenville and Pitt County, and that same are being operated in violation of the law, and to the detriment of public morals, and especially to the detriment of the morals of the youth of the town and county. . . . Defendants say that even if license taxes have been paid on said machines as alleged by plaintiff, that same does not legalize the operation of illegal machines, for that the licensing department of the State, county or town has no authority to license crime in any form. . . . Defendants admit that the machines which they intended to seize under the law and under instruction of the court, and by direction of the grand jury, are the property of the plaintiff, but defendants deny that they intended to confiscate said machines, or to do anything with same other than hold them as evidence and subject to the orders of the court of competent jurisdiction; and defendants further deny, upon information and belief, that said machines come within the classification of subsection 1 of section 130 of chapter 158 (Laws of 1939), or any other legal classification. . . . Defendants allege and say that if plaintiff's continuance in business is dependent upon his being able to circumvent and defy the law by the operation of unlawful slot machines prohibited by statute, he should be forced out of such business, certainly in so far as said business is unlawful or of a criminal nature, but it is expressly denied that defendants intend in any way to interfere with any lawful business that plaintiff may be conducting. . . . Defendants allege and say that they have no intention of interfering with any legal machines, slot or otherwise, owned by the plaintiff or anyone else, and that they have no intention of confiscating any machines—but only intend to hold same as evidence—subject to the orders of the court, and that they have made no unlawful threats against the defendants or anyone else, and that they have not and do not intend to infringe upon any of the constitutional or legal rights of plaintiff, and that their only intention is to enforce the law under instruction of the court and on recommendation of the grand jury; and defendants, on information and belief, and upon such information and belief, aver: That plaintiff, who is conducting an illegal slot machine business and racket, is attempting to enjoin and prevent them from properly performing their duties as officers of the law. . . . Wherefore, defendants pray the court: (1) That the temporary injunction or restraining order issued in this cause on the 4th day of Septem-

ber, 1939, by Hon. Leo Carr, one of the judges of the Superior Court, be dissolved and dismissed to the end that defendants may proceed unhampered and unfettered in the performance of their duty as law enforcement officers. (2) That the court hold, as a matter of law, that it is without authority to enjoin and restrain law enforcement officers from enforcing the criminal law of the State," etc.

A temporary restraining order was duly issued, but dissolved by his Honor, J. Paul Frizzelle, on the hearing. In the judgment, in part, is the following: "The court being of the opinion that it is without jurisdiction or authority in this cause to restrain the sheriff of Pitt County and the chief of police of Greenville, G. A. Clark, in the performance of their duty as law enforcement officers in enforcing the criminal laws of the State of North Carolina involved in this matter, but if the court does have such jurisdiction or authority, that the restraining order heretofore issued herein should in any event be dissolved, and, being of such opinion, announced that the court did not care to hear evidence as to the legality or illegality of said machines involved in the controversy. . . . It is further considered, ordered and adjudged that the plaintiff have until September 23rd to take and remove from their present locations all machines referred to in the petition and he shall be permitted to store said machines if he so desires, pending the appeal herein to the Supreme Court, without molestation of the defendants, their agents or servants."

To the foregoing judgment the plaintiff excepted and assigned error and appealed to the Supreme Court. The exception and assignment of error and other necessary facts will be set forth in the opinion.

*Albion Dunn* for plaintiff.
*D. M. Clark* and *Harding & Lee* for defendants.

Clarkson, J. Did the court below commit error in refusing to hear evidence and to find facts, as to the legality of the machines involved in the controversy? We think so, under the facts and circumstances of this case.

Chapter 158, Public Laws 1939, expressly prohibits certain types of slot machines and permits other types of slot machines as lawful. Plaintiff claims his machines are of those types made lawful by this act, whereas defendant officers contend that these machines are illegal and, as such, may be seized and destroyed under C. S., 4435. Plaintiff announced that he was prepared to offer evidence as to the legality of the machines here involved, but, the court below, being of the opinion that it was without jurisdiction to restrain defendants in the enforcement of the criminal law, refused to hear evidence and dissolved the temporary restraining order.

In *Hinkle v. Scott,* 211 N. C., 680, the court presumed that the trial court found sufficient facts, since there were no findings of fact in the judgment and no request for such findings. Here, however, we are not able to indulge in this presumption, as it appears affirmatively in the judgment that "the court did not care to hear evidence as to the legality or illegality of said machines involved in the controversy." Further, in *Hinkle v. Scott, supra,* it was pointed out that since the operation of the machines was permitted pending the appeal, no "substantial loss" was caused the owners of the machines; in the instant case the machines were ordered removed from operation and placed in storage pending the appeal, thus resulting in the discontinuance of plaintiff's business in the county pending the appeal.

Generally, the equitable powers of the courts may not be invoked to prevent the enforcement of a criminal law where the basis of the petition in equity constitutes a valid defense to an indictment for the violation of the law in question. This principle appears in our cases as early as *Cohen v. Comrs.,* 77 N. C., 2 (3), where, in refusing to allow an injunction to restrain town commissioners from enforcing an ordinance, *Reade, J.,* speaking for the Court, pointed out that the plaintiff if injured had redress in an action for damages and declared, ". . . We are aware of no principle or precedent for the interposition of a court of equity in such cases." In *Paul v. Washington,* 134 N. C., 363, in declaring that the validity of an ordinance cannot be tested by injunction, the principle that the courts cannot enjoin the enforcement of the criminal law or of municipal ordinances was clearly enunciated; the reason assigned for the rule being that "the State cannot be enjoined from the execution of its criminal laws." This case was followed with approval, the additional reasons and further citations in support of the rule given, in *S. v. R. R.,* 145 N. C., 495, where, at p. 522, it was stated: "The doctrine may be considered as settled in this State against the right of a court exercising equitable jurisdiction to interfere by injunction with other courts in the due course of administering and enforcing the criminal laws of the State." This principal was reiterated in *Express Co. v. High Point,* 167 N. C., 103, where at p. 105, *Brown, J.,* for the Court, wrote: "The courts of this State will not undertake by injunction to enjoin the enforcement of the criminal law. The party charged with crime must make this defense and plead to the indictment, and if convicted, he may, by appeal, bring his case to this Court."

In *Turner v. New Bern,* 187 N. C., 541 (548), speaking to the subject, it is said: "The same ruling that an injunction will not lie against the enforcement of a city ordinance when there is a remedy by defense on the trial of an indictment for the misdemeanor for violation of the ordinance or by action for damages, has been recognized in all jurisdictions.

McCormick v. Proctor.

21 L. R. A., 86, and notes; 38 L. R. A., 328, and notes; and 2 L. R. A. (N. S.), 632, and notes, and in other cases in our own reports. Indeed, the whole matter has been very recently discussed and the same proposition asserted, citing the above and other cases, in *Thompson v. Lumberton,* 182 N. C., 260, where it is held that 'The enforcement of the criminal law, whether by statute or valid ordinance, made punishable as a misdemeanor under general statute, cannot be interfered with by the equitable remedy of injunction. When its violation is made a misdemeanor its validity may be tested by the one who is tried for violating it as a matter of defense, and we cannot invoke the equity jurisdiction of the court by an injunction on the ground that his remedy is inadequate, because an incorporated city or town cannot be made liable in damages in such matters.' It has been often and fully settled that an injunction will not lie against the enforcement of an ordinance that we might well have been content to rest the decision in this case entirely upon that proposition, which has always been asserted and never denied by any decision in this State." This principle has been approved by the Supreme Court of the United States in *R. R. Co. v. Raleigh,* 219 Fed., 573, affirmed 242 U. S., p. 15.

It has been the law and custom immemorially to hold as evidence to the trial of a criminal case, pistols, alleged illicit liquor, etc.

N. C. Code, 1935 (Michie), sec. 4435, *supra,* is as follows: "All justices of the peace, sheriffs, constables and officers of police are hereby authorized and directed, on information made to them on oath that any gaming table prohibited to be used by this article, or any illegal punchboard or illegal slot machine is in the possession or use of any person within the limits of their jurisdiction, to destroy the same by every means in their power; and they shall call to their aid all the good citizens of the county, if necessary, to effect its destruction."

In *Daniels v. Homer,* 139 N. C., 219 (225), is the following: "The U. S. Supreme Court further says: 'It is said, however, that the nets are not in themselves a nuisance, but are perfectly lawful acts of manufacture and are ordinarily used for a lawful purpose. This, however, is by no means a conclusive answer. Many articles, such, for instance, as cards, dice and other articles used for gambling purposes, and perfectly harmless in themselves, but may become nuisances by being put to an illegal use, and in such cases fall within the ban of the law and may be summarily destroyed. . . . The power of the Legislature to declare that which is perfectly innocent in itself to be unlawful, is beyond question. (*People v. West,* 106 N. Y., 293), and in such case the Legislature may annex to the prohibited act all the incidents of a criminal offense, including the destruction of property denounced by it as a public nuisance.' "

The law imposes on sheriffs, constables, and police officers, the duty of taking cognizance of the possession and use of illegal slot machines and other gambling devices, and of seizing and destroying them. Diligent performance of this duty on the part of enforcement officers is to be highly commended and, only by a vigorous assertion of all the lawful means available, may we eradicate this persistent evil. In addition to indictment, the summary processes of the law, which in themselves recognize the unusual character and effect of the evil, must be upheld when applicable, and it should be the duty of the court to encourage, rather than embarrass, the efforts made by administrative officers to suppress such affronts to public decency, morals and good order.

In this case, however, the plaintiff protests that he is engaged in a lawful business and that the coin-slot devices used are not of an illegal type. The trial judge declined to hear evidence or make any findings of fact, and dissolved the injunction against their seizure, or further molestation of plaintiff's business.

It does not directly appear from the record that defendants were acting under authority of a warrant or by virtue of any specific criminal prosecution against plaintiff, although defendants answered by way of defense that their action in seizing said slot machines was an official action in the prosecution of their duties as law-enforcing officers. Thus, it may be open to doubt whether defendants have brought themselves squarely within the protection of the principle discussed at some length above. On the other hand, plaintiff has alleged that he has paid taxes to the State on said machines as legal slot machines, that the Attorney-General of North Carolina has given as his opinion that said machines are legal, and that he has been advised that the acts of defendants are "oppressive, prohibitive and confiscatory, and without warrant of law" and "that if defendants are not restrained, this plaintiff will be forced out of business and deprived of his statutory and Constitutional right to sell, distribute, lease and put on location in various places of business for amusement, his property will be confiscated without due process of law and he will be deprived of a lawful business, which he is entitled to pursue." In thus invoking equity he is supported by numerous cases setting forth the exception to the general rule previously discussed, that exception being that equity will interfere, even to prevent criminal prosecutions, when this is necessary to protect effectually property rights and to prevent irremediable injuries to the rights of persons. *Advertising Co. v. Asheville,* 189 N. C., 737; *Terrace v. Thompson,* 263 U. S., 197; *Truax v. Raich,* 239 U. S., 33; Note, 25 L. R. A. (N. S.), 193. However, it is the duty of plaintiff who invokes the action of equity to bring himself within the exception to the general rule, this Court having the power to examine the evidence to determine whether the facts are suffi-

cient to bring him within the protection of the exception. *Advertising Co. v. Asheville, supra* (739). As the court below has failed to find the facts, this Court is unable to determine whether the instant case falls within the general rule or the exception thereto.

For the reasons given, and to the end that the facts may be found, the cause is remanded.

Error and remanded.

Stacy, C. J., concurring: The question for decision is whether a court of equity has the authority to hear the plaintiff on his allegation that the defendants herein, sheriff and chief of police, respectively, have, without warrant of law, threatened to destroy his legitimate business and will destroy it, to plaintiff's irreparable damage, unless restrained. The answer is "Yes."

The plaintiff alleges that he is engaged in a lawful business, operating and renting in Pitt County 100 vending machines, or amusement machines and coin-in-the-slot machines, "such as are legalized under section 130, chapter 158, Public Laws of 1939"; that the reasonable value of said machines is $9,000; that he has paid State, county and municipal taxes amounting to $3,600 for the privilege of engaging in the business; that the Attorney-General of the State has, in a formal opinion, declared the business of the plaintiff to be legal, and pursuant to this opinion the State Commissioner of Revenue has duly licensed the machines in question; that the defendants herein have threatened to seize the plaintiff's machines "on sight" and will seize and confiscate them, to plaintiff's irreparable injury, unless restrained by a court of equity to which he appeals for the protection of his property rights, and that plaintiff has no adequate remedy at law.

The court declined to hear any evidence, and the plaintiff's appeal is from the refusal of the court to hear him. The judgment recites: "The court being of the opinion that it is without jurisdiction or authority in this cause . . . announced that the court did not care to hear evidence as to the legality or illegality of said machines involved in the controversy."

The case, then, comes to this: The State of North Carolina, by act of Assembly, authorizes the use and operation of certain slot machines (while prohibiting the use of others) and imposes a number of taxes for the privilege of engaging in such business. The plaintiff applies for licenses to engage in this business. They are granted to him on the advice of the Attorney-General of the State that his business is legal. He pays his taxes amounting to $3,600. The officers of the law threaten to seize his machines "on sight" and to confiscate his property. He appeals to the courts of the State for the protection of his property

rights. If the taxing authorities can afford to accept the plaintiff's money and license his business as legitimate, it seems only just and fitting, *ex æquo et bono,* for the courts to say whether they are right or wrong. *Advertising Co. v. Asheville,* 189 N. C., 737, 128 S. E., 149; *Crawford v. Marion,* 154 N. C., 73, 69 S. E., 763; *Terrace v. Thompson,* 263 U. S., 197; *Dobbins v. Los Angeles,* 195 U. S., 223. See dissenting opinion in *Hinkle v. Scott,* 211 N. C., 680, 191 S. E., 512, and concurring opinions in *Turner v. New Bern,* 187 N. C., 541, 122 S. E., 469; and *R. R. v. Goldsboro,* 155 N. C., 356, 71 S. E., 514.

While the defendants do not allege that they are acting under authority of any warrant or by virtue of a criminal prosecution instituted against the plaintiff, still, as the trial court apparently thought otherwise, or so apprehended the record, it may not be amiss to observe that it is not after the manner of the courts of equity to close their doors on allegations of irreparable property loss, even in the face of a criminal prosecution, actual or threatened. *Advertising Co. v. Asheville, supra; Clinard v. Winston-Salem, post,* 119. The general rule is, that equity will not interfere with a criminal prosecution, merely as such, *In re Sawyer,* 124 U. S., 200, but it will enjoin a criminal prosecution, actual or threatened, where the accused is about to be deprived of the right to conduct a lawful business or when necessary to protect property rights from irreparable injury. *Truax v. Raich,* 239 U. S., 33; *Morrow v. Atlanta,* 162 Ga., 228, 133 S. E., 162; *Shellman v. Saxon,* 134 Ga., 29, 67 S. E., 438, 27 L. R. A. (N. S.), 452. "And a similar injury may be inflicted, and there may exist ground for equitable relief, when an officer, insisting that he has the warrant of the statute, is transcending its bounds, and thus unlawfully assuming to exercise the power of government against the individual owner, is guilty of an invasion of private property." *Philadelphia Co. v. Stimson,* 223 U. S., 605.

The right to conduct a lawful business, or to earn a livelihood, is regarded as fundamental. *S. v. Harris,* 216 N. C., 746; 19 Am. Jur., 144. The plaintiff is entitled to be heard. We are not now concerned with whether he can make good his charge. If he can, he is entitled to relief. If he cannot, the defendants will be vindicated.

BARNHILL and WINBORNE, JJ., join in this opinion.