NO. COA14-85

NORTH CAROLINA COURT OF APPEALS

Filed: 5 September 2014

SANDHILL AMUSEMENTS, INC.
AND GIFT SURPLUS, LLC,
    Plaintiffs,

v.

SHERIFF OF ONSLOW COUNTY,
NORTH CAROLINA, ED BROWN, in
his official capacity; and
DISTRICT ATTORNEY FOR THE FOURTH
PROSECUTORIAL DISTRICT
OF THE STATE OF NORTH CAROLINA,
ERNIE LEE, in his official
capacity,
    Defendants.

Onslow County
No. 13 CVS 3705

Appeal by defendant from orders entered on 4 November 2013 by Judge Jack Jenkins in Onslow County Superior Court. Heard in the Court of Appeals 8 May 2014.

> *Onslow County Attorney, by Lesley F. Moxley; and Turrentine Law Firm, PLLC, by S.C. Kitchen, for Defendant-Appellant.*
>
> *Daughtry, Woodard, Lawrence & Starling, by Kelly K. Daughtry; and Hyler & Lopez, P.A., by Stephen P. Agan and George B. Hyler, Jr., for Plaintiffs-Appellees.*

HUNTER, JR., Robert N., Judge.

Onslow County Sheriff Ed Brown ("Sheriff Brown") appeals from orders entered on 4 November 2013 denying his motions to dismiss under Rule 12 as well as granting a preliminary injunction in favor

of plaintiffs Sandhill Amusements, LLC ("Sandhill") and Gift Surplus, LLC ("Gift Surplus") (collectively "Plaintiffs").[1]

We agree with Sheriff Brown that this Court has jurisdiction to determine his interlocutory appeal of the motions to dismiss because his defense of sovereign immunity affects a substantial right warranting immediate review. We vacate certain portions of the preliminary injunction that affect a substantial right and dismiss Sheriff Brown's appeal from the remaining portions of that order. On the merits of the motions to dismiss, we affirm the trial court.

## I. Facts & Procedural History

On 2 July 2013, Alcohol Law Enforcement ("ALE") Special Agent Kenny Simma ("Agent Simma"), Assistant Supervisor Keith Quick ("Agent Quick"), and Onslow County Sheriff's Office Sergeant John Matthews ("Sgt. Mathews"), in response to complaints that certain video gaming machines (hereinafter "kiosks") were providing money payouts, visited a business in the Rhodestown area of Onslow County. The business that Sgt. Matthews and the ALE agents visited

---

[1] Gift Surplus is a Georgia corporation licensed to do business in North Carolina. Gift Surplus licenses the kiosks at issue in this case. Gift Surplus's kiosks are "sweepstakes promotion devices used to promote the sale of gift cards and e-commerce business." Sandhill Amusement, Inc. ("Sandhill"), distributes the kiosks in Onslow County and surrounding areas.

was located in a building with blacked-out windows lacking any exterior sign displaying the name of the business. Sgt. Matthews and the ALE agents peered inside through a crack in the tint and knocked on the door. A male unlocked and opened the door and allowed Sgt. Matthews and the ALE agents inside. Agent Simma said that inside

> [t]he only things in the business was [sic] a counter with two Megatouch video poker machines on the counter, a pool table, I think a jukebox. I can't remember if it was three or four of these specific devices we're referring to, and a claw machine that -- like you see at Walmart, you put a quarter in and try to pick up a stuffed animal, and a pool table.

Later the business's proprietor arrived and showed Sgt. Matthews and the ALE agents how the machines worked.

The kiosks each include a 19" touch-screen display, an audio speaker, a control panel with "print ticket and play buttons," a receipt printer, and a currency acceptor. The kiosks allow patrons the opportunity to purchase gift certificates that may be used at Gift Surplus's online store, www.gift-surplus.com. When a patron inserts currency into the kiosk, a receipt is printed with equivalent credits ($1 is equivalent to 100 sweepstakes entries). The receipts printed also contain a "quick response code," which users may scan to enter a weekly drawing on the Gift Surplus

website.  Patrons may also use the kiosk to request a free entry request code, which allows for 100 free sweepstakes entries.

The kiosks contain five game themes: "Silver Bar Spin," "Truck Stop," "Lucky Shamrock 2," "Magic Tricks," and "Candy Money."  Nick Farley ("Mr. Farley"), an expert in gaming machines and software, described these game as follows:

> Each of the aforementioned game themes offer several play levels which the participant may choose.  A single finite pool is allocated to each play level for each game theme.  Game play for these themes may be accomplished one of two ways:
>
> (1) By pressing the "REVEAL" button an entry is drawn from the corresponding theme/play level finite pool. The potential value is shown to the participant, and they are prompted to "Press SKIP or ANIMATE." Pressing either button will reveal a reel outcome.  If the entry had no winning prize, a non-winning reel combination is displayed and either the play ends (if the "SKIP" button was pressed), or the participant is given the chance to nudge one of the three reels either up or down to another non-winning outcome (if the "ANIMATE" button was pressed). If the entry has a winning prize, a non-winning reel outcome is displayed and the participant must make a decision to nudge one of the three reels either up or down to align a winning combination corresponding to the prize value previous shown.
>
> (2) Alternatively, a participant may initiate the play by pressing the "ANIMATE" or "PLAY" button.  A game initiated by pressing either the "ANIMATE" or "PLAY" button will not show the potential win value, but rather simply

display a non-winning reel outcome which the player must then make a decision to nudge one of the three reels either up or down to align a winning combination.

Regardless of the method the player uses to initiate play, the potential prize-value is determined by the entry revealed. Whether the potential prize is awarded is dependent upon the participant successfully nudging the correct reel in the correct direction to obtain a winning combination of symbols. Should a player fail to nudge the correct reel in the correct direction to obtain a winning combination, the potential prize is forfeited.

Agent Simma later told his supervisor about his visit and expressed his opinion that the kiosks were illegal video sweepstakes machines. The ALE agents later returned and took photographs and videos of the kiosks. Agent Simma then sent the videos to Deputy Director Mark Senter at ALE headquarters, who also felt that the kiosks in Rhodestown violated the statutes regulating video sweepstakes machines. After receiving the ALE agents' report, District Attorney Ernie Lee and Sheriff Brown composed a letter to Richard W. Frye ("Mr. Frye"), President of Sandhill (hereinafter "innocent owner letter"). The letter informed Mr. Frye that the kiosks would be seized as evidence and that the person/persons in possession would be criminally charged. Mr. Frye testified that Sandhill removed kiosks from two Onslow County locations and opted not to place kiosks in five other Onslow

County locations after receiving the innocent owner letter.

On 27 September 2013, Sandhill and Gift Surplus filed a joint Complaint and Motion for Preliminary Injunctive Relief against Sheriff Brown in his official capacity. The complaint alleged that Plaintiffs were suffering irreparable injury from the loss of revenues and profits resulting from the innocent owner letter issued by Sheriff Brown stating that the Plaintiffs' kiosks were illegal. Plaintiffs alleged that, since Sheriff Brown issued this letter, existing retail outlets that used Plaintiffs' products have removed the kiosks, refused to install the kiosks, or gave Plaintiffs notice that they intended to remove the kiosks. Plaintiffs also attached the affidavit and report of Mr. Farley, who opined that the kiosks operated based on skill and dexterity, rather than mere chance.

Plaintiffs' complaint sought the issuance of (i) preliminary and permanent injunctions prohibiting Defendants from removing the kiosks from any establishment in North Carolina and from issuing warnings and citations to such facilities; (ii) preliminary and permanent injunctions prohibiting Defendants from forcing or coercing a North Carolina retailer to remove Plaintiffs' kiosks; (iii) a preliminary injunction prohibiting Defendants from making or issuing statements outside of the litigation stating that the

kiosks were illegal; and (iv) a declaratory judgment after a full hearing that declared the kiosks and Plaintiffs' marketing system are "not prohibited gambling, lottery or gaming products."

On 9 October 2013, Sheriff Brown filed motions to dismiss for lack of subject matter jurisdiction under N.C. R. Civ. P. 12(b)(1), lack of personal jurisdiction under N.C. R. Civ. P. 12(b)(2), failure to state a claim upon which relief may be granted under N.C. R. Civ. P. 12(b)(6), and failure to bring suit on behalf of the real party in interest under N.C. Gen. Stat. § 1-57 (2013).

On 11 October 2013, the trial court held a hearing concerning Sheriff Brown's motion to dismiss and Plaintiffs' motion for injunctive relief. On 4 November 2013, Judge Jenkins entered an order relying in part on the expert witness's opinions that denied Sheriff Brown's motion to dismiss and granted Plaintiffs' motion for a preliminary injunction. In its orders, the trial court held that there was a likelihood that the Plaintiffs would prevail in that:

> (a) *Gift Surplus System v1-01.1* and the Gift Surplus computer kiosk operated by Gift Surplus, LLC, conduct a valid sweepstakes within the applicable law.
>
> (b) The *Gift Surplus System v1-01.1* and the Gift Surplus computer kiosk operated by Gift Surplus, LLC, in promotion of their sweepstakes are dependent on skill or dexterity as required under North Carolina

statutory law.

> (c) The *Gift Surplus System v1-01.1* and the Gift Surplus computer kiosk operated by Gift Surplus, LLC, is a lawful promotional device for the sale of gift certificates and operation of their promotional sweepstakes.

The trial court also held that the suit was not barred by the doctrine of sovereign immunity and that Defendant had failed to show that Plaintiffs' claim should be dismissed under Rule 12(b)(1), Rule 12(b)(2), Rule 12(b)(6), or N.C. Gen. Stat. § 1-57. Accordingly, the trial court denied Defendant's motion to dismiss and granted Plaintiffs' request for the issuance of a preliminary injunction. Under the preliminary injunction, Sheriff Brown was:

> a. Restrained and enjoined from using North Carolina General Statutes Sections 14-292, 14-293, 14-301, 14-306.1A, and 14-306.4 to prohibit the Plaintiffs from displaying, selling, operating or promoting the *Gift Surplus System v1-01.1* and the Gift Surplus computer kiosk and sweepstakes promotion of the www.giftsurplus.com website and gift cards; and,
>
> b. Restrained and enjoined from compelling or attempting to compel, coerce[,] or persuade the Plaintiffs to remove the *Gift Surplus System v1-01.1* and the Gift Surplus computer kiosks and equipment associated with the kiosks and sweepstakes from any retail establishment in Onslow County; and,
>
> c. Restrained and enjoined from citing or prosecuting the Plaintiffs for criminal

administrative offenses or violations by reason of such party's display, sale, operation[,] or promotion of the *Gift Surplus System v1-01.1* and the Gift Surplus computer kiosks and sweepstakes promotions of the www.gift-surplus.com website and gift cards in Onslow County.

The trial court limited the applicability of the preliminary injunction to "those Onslow County places which are validly operating four or less *Gift Surplus System v1-01.1*/Gift Surplus computer kiosks. . . ." Sheriff Brown filed timely written notice of appeal on 13 November 2013.

## II. Appellate Jurisdiction

A judicial order is either interlocutory or the final determination of the rights of the parties. N.C. R. Civ. P. 54(a). In *Veazey v. Durham*, 231 N.C. 357, 57 S.E.2d 377 (1950), our Supreme Court succinctly explained the difference between the two types of orders:

> A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court. . . . An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.

*Id.* at 361–62, 57 S.E.2d at 381 (citations omitted); *see also Royal Oak Concerned Citizens Ass'n v. Brunswick Cnty*, ___ N.C. App ___,

___, 756 S.E.2d 833, 835 (2014) (citations omitted). Final judgments are appealable under N.C. Gen. Stat. § 7A-27 (2013). "Interlocutory orders may be appealed only where there has been a final determination of at least one claim" and the trial court certifies under N.C. R. Civ. P. 54(b) that "there is no just reason to delay the appeal" or, alternatively, if "delaying the appeal would prejudice a substantial right." *White v. Carver*, 175 N.C. App. 136, 139, 622 S.E.2d 718, 720 (2005) (citations, alterations, and quotation marks omitted) ("The reason for this rule is to prevent fragmentary, premature and unnecessary appeals by permitting the trial court to bring the case to final judgment before it is presented to the appellate courts."); *see also* N.C. Gen. Stat. § 1-277 (2013).

Sheriff Brown's appeal from the order denying the motions to dismiss and granting the preliminary injunction is interlocutory since the trial court's orders did not dispose of the case. Additionally, there was no Rule 54(b) certification by the trial court. Accordingly, we consider whether Sheriff Brown's asserted defense of sovereign immunity affects a substantial right.

Whether an interlocutory order affects a substantial right "is determined on a case by case basis." *McConnell v. McConnell*, 151 N.C. App. 622, 625, 566 S.E.2d 801, 803 (2002). The appellant

bears the burden of establishing that a substantial right will be affected unless he is allowed an immediate appeal. *Embler v. Embler*, 143 N.C. App. 162, 166, 545 S.E.2d 259, 262 (2001) (citations omitted). "Our Supreme Court has defined 'substantial right' as a legal right affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which a [person] is entitled to have preserved and protected by law: a material right." *Royal Oak*, ___ N.C. App. at ___, 756 S.E.2d at 835.

"Essentially a two-part test has developed—the right itself must be substantial and the deprivation of that substantial right must potentially work injury . . . if not corrected before appeal from final judgment." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 726, 392 S.E.2d 735, 736 (1990). To prove that a substantial right is affected, an appellant must first prove that the right itself is substantial. *Id.* Second, an appellant "must demonstrate *why* the order affects a substantial right. . . ." *Hoke Cnty Bd. of Educ. v. State*, 198 N.C. App. 274, 277–78, 679 S.E.2d 512, 516 (2009) (emphasis in original).

Sheriff Brown asserts that the rejection of his defense of sovereign immunity affects a substantial right. Sheriff Brown also argues that the trial court's issuance of the preliminary

injunction enjoins him from enforcing criminal laws and also affects a substantial right. We address each in turn.

## A. Motions to Dismiss

Sheriff Brown contends that the denial of his 12(b)(1), (2), and (6) motions to dismiss based on sovereign immunity affects a substantial right. We agree.

"The denial of a motion to dismiss is an interlocutory order which is not immediately appealable unless that denial affects a substantial right of the appellant." *Carl v. State*, 192 N.C. App. 544, 550, 665 S.E.2d 787, 793 (2008). "The appealing party bears the burden of demonstrating that the order from which he or she seeks to appeal is appealable despite its interlocutory nature." *Hamilton v. Mortg. Info. Servs.*, 212 N.C. App. 73, 77, 711 S.E.2d 185, 189 (2011).

This Court has "repeatedly held that appeals raising issues of governmental or sovereign immunity affect a substantial right sufficient to warrant immediate appellate review." *Price v. Davis*, 132 N.C. App. 556, 558–59, 512 S.E.2d 783, 785 (1999). "[W]hen [a] motion is made on the grounds of sovereign and qualified immunity,. . . a denial is immediately appealable, because to force a defendant to proceed with a trial from which he should be immune would vitiate the doctrine of sovereign immunity." *Smith v.*

*Phillips*, 117 N.C. App. 378, 380, 451 S.E.2d 309, 311 (1994).

Here, we consider the denial of a motion to dismiss based on sovereign immunity and, accordingly, we must review whether Sheriff Brown is entitled to that defense. *Atl. Coast Conference v. Univ. of Maryland*, ___ N.C. App. ___, ___, 751 S.E.2d 612, 617 (2013) ("Defendants' underlying interest in asserting sovereign immunity is substantial . . . [.]"); *Richmond Cnty. Bd. of Educ. v. Cowell*, ___ N.C. App. ___, ___, 739 S.E.2d 566, 568 (2013), *review denied*, ___ N.C. ___, 747 S.E.2d 553 (2013).

However, we note that "'a motion to dismiss based on sovereign immunity is a jurisdictional issue [and] whether sovereign immunity is grounded in a lack of subject matter jurisdiction or personal jurisdiction is unsettled in North Carolina.'" *Atl. Coast Conference*, ___ N.C. App. at ___, 751 S.E.2d at 617 (quoting *M Series Rebuild, LLC v. Town of Mount Pleasant*, ___ N.C. App. ___, ___, 730 S.E.2d 254, 257 (2012) (alterations omitted)). "[B]ecause our case law remains ambiguous as to the type of jurisdictional challenge presented by a sovereign immunity defense, the ability of a litigant raising the defense to immediately appeal may vary, to some extent, based on the manner in which the motion is styled." *Id.* As in *Atl. Coast Conference*, "we leave the type of jurisdictional challenge presented by a sovereign immunity claim

for resolution by a future court" and accept jurisdiction of Sheriff Brown's appeal pursuant to the authority conferred by N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d). *Id.* Accordingly, we now address whether sovereign immunity barred Plaintiffs' action for declaratory judgment.

## i. Standard of Review

The standard of review for the denial of a motion to dismiss on the basis of sovereign immunity is *de novo*. *White v. Trew*, 366 N.C. 360, 363, 736 S.E.2d 166, 168 (2013).

"Under *de novo* review, we examine the case with new eyes." *State v. Young*, ___ N.C. App. ___, ___, 756 S.E.2d 768, 779 (2014) "[*D*]*e novo* means fresh or anew; for a second time, and an appeal *de novo* is an appeal in which the appellate court uses the trial court's record but reviews the evidence and law without deference to the trial court's rulings." *Parker v. Glosson*, 182 N.C. App. 229, 231, 641 S.E.2d 735, 737 (2007) (quotation marks and citations omitted).

## ii. Merits of Sovereign Immunity Defense

"Under the doctrine of sovereign immunity, the State is immune from suit absent waiver of immunity."[2] *Meyer v. Walls*, 347 N.C.

---

[2] Sheriff Brown does not argue that Plaintiffs failed to assert waiver of sovereign immunity in his brief. When considering a motion to dismiss based on a defense of sovereign immunity, the

97, 104, 489 S.E.2d 880, 884 (1997).  Further

> when an action is brought against individual officers in their official capacities the action is one against the state for the purposes of applying the doctrine of sovereign immunity. . . .[I]f plaintiff's complaint demonstrates that she has sued the defendants only in an official capacity, rather than as individuals, defendants would be potentially shielded from plaintiff's cause of action by governmental immunity.

*Whitaker v. Clark*, 109 N.C. App. 379, 381–82, 427 S.E.2d 142, 143–44 (1993) (citations omitted).  Ultimately

> [t]he crucial question for determining whether a defendant is sued in an individual or official capacity is the nature of the relief sought, not the nature of the act or omission alleged.  If the plaintiff seeks an injunction requiring the defendant to take an action involving the exercise of a governmental power, the defendant is named in an official capacity.  If money damages are sought, the court must ascertain whether the complaint indicates that the damages are sought from the government or from the pocket of the individual defendant. If the former, it is an official-capacity claim; if the latter, it is an individual-capacity claim; and if it is both, then the claims proceed in both capacities.

---

complaint must allege a waiver, without which the complaint fails to state a cause of action. *Paquette v. Cnty. of Durham*, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717 (2002).  However, Sheriff Brown does not raise this issue on appeal nor does waiver appear to be addressed by either party or considered by the trial court. Accordingly we do not address this issue on appeal. *Abbott v. N.C. Bd. of Nursing*, 177 N.C. App. 45, 47–48, 627 S.E.2d 482, 484–85 (2006).

*Meyer*, 347 N.C. at 110, 489 S.E.2d at 887 (quotation marks and citations omitted).

"The doctrine of sovereign immunity bars actions against public officials sued in their official capacities. Sheriffs and deputy sheriffs are considered public officials for purposes of sovereign immunity. Thus, sovereign immunity bars plaintiff's claims against defendants in their official capacities." *Phillips v. Gray*, 163 N.C. App. 52, 56–57, 592 S.E.2d 229, 232 (2004) (citations omitted).

Plaintiffs sued Sheriff Brown in his official capacity in accordance with *White*. 366 N.C. at 364, 736 S.E.2d at 169. Additionally, Plaintiffs seek "an injunction requiring the defendant to take an action involving the exercise of a governmental power," which means that "the defendant is named in an official capacity." *Meyer*, 347 N.C. at 110, 489 S.E.2d at 887. From the foregoing, it appears that Plaintiffs' claim should be dismissed, since sovereign immunity would typically bar claims against Sheriff Brown in his official capacity.

However, this Court's opinion in *Am. Treasures, Inc. v. State*, 173 N.C. App. 170, 617 S.E.2d 346 (2005), controls this case. *Am. Treasures* concerned a seller of long-distance pre-paid phone cards that included a free promotional scratch-off game piece. *Id*. at

172–73, 617 S.E.2d at 348. The plaintiff sold these cards through convenience stores and, eventually, ALE agents began "threatening to take action against the convenience stores' licenses to sell beer and alcoholic beverages . . . on the grounds that the sale of plaintiff's phone cards was illegal." *Id.* at 173-74, 617 S.E.2d at 348. The plaintiff brought an action for declaratory judgment and injunctive relief against the State. *Id.* at 174, 617 S.E.2d at 348.

In *Am. Treasures*, this Court discussed *McCormick v. Proctor*, 217 N.C. 23, 6 S.E.2d 870 (1940). *Am. Treasures*, 173 N.C. App. at 175, 617 S.E.2d at 349-50. Specifically:

> In *McCormick*, law enforcement officers interfered with an owner's possession of certain slot machines on the grounds that such machines were illegal. *Id.*, 217 N.C. at 24, 6 S.E.2d at 871. The trial court declined to restrain the interference on the grounds that the officers were engaged in the enforcement of criminal law and refused to hear evidence or find facts regarding the legality of the machines. *Id.* Citing the above principles, our Supreme Court reversed, holding that *equity may nevertheless be invoked as an exception to those principles and may operate to "interfere, even to prevent criminal prosecutions, when this is necessary to protect effectually property rights and to prevent irremediable injuries to the rights of persons." Id.*, 217 N.C. at 29, 6 S.E.2d at 874.

*Id.* at 175, 617 S.E.2d at 349 (emphasis added). This Court in *Am.*

*Treasures* also discussed *Animal Protection Society v. State*, 95 N.C. App. 258, 382 S.E.2d 801 (1989):

> Moreover, this Court has previously reviewed a trial court's consideration of a prayer for declaratory and injunctive relief concerning the applicability of North Carolina's bingo statutes to a charitable sales promotion without indicating the existence of any jurisdictional bar. *Animal Protection Society v. State*, 95 N.C. App. 258, 382 S.E.2d 801 (1989).

*Am. Treasures*, 173 N.C. App. at 175–76, 617 S.E.2d at 349–50.

Ultimately this Court relied on the two cases in holding that:

> the trial court's exercise of jurisdiction under the facts of the instant case was proper. First, we find *McCormick* and *Animal Protection Society* are *sufficiently similar to the facts of the instant case and are controlling on the issue of the trial court's jurisdiction*. Second, the *declaratory judgment procedure is the only way plaintiff can protect its property rights and prevent ALE from foreclosing the sale of its product in convenience stores*.
>
> . . .
>
> Accordingly, *without seeking a declaratory judgment, plaintiff would be unable to effectively protect its property rights*. Defendants' jurisdictional argument is overruled.

*Id.* at 176, 617 S.E.2d at 350 (emphasis added).

Here, as in *Am. Treasures*, Plaintiffs face restrictions on their property rights resulting from Sheriff Brown's transmission

of the innocent owner letter, which effectively barred any future sale and current placement of their kiosks. Additionally, as in *Am. Treasures*, sovereign immunity acts as a bar to Plaintiffs' ability to seek redress through monetary damages. Without such redress, Plaintiffs have no viable option for protecting their property rights during this litigation.

Accordingly, as (i) the facts at present are sufficiently similar to the controlling cases in this area and (ii) the declaratory judgment procedure is the only method by which Plaintiffs have recourse to protect their property interests in the kiosks, we hold that the trial court properly exercised jurisdiction and that sovereign immunity did not bar Plaintiffs' claim for injunctive relief. We next address whether Sheriff Brown's challenge to the trial court's decision to issue a preliminary injunction is interlocutory.

**B. Preliminary Injunction**

> The purpose of a preliminary injunction is ordinarily to preserve the status quo pending trial on the merits. Its issuance is a matter of discretion to be exercised by the hearing judge after a careful balancing of the equities. Its impact is temporary and lasts no longer than the pendency of the action. Its decree bears no precedent to guide the final determination of the rights of the parties. In form, purpose, and effect, it is purely interlocutory. Thus, the threshold question presented by a purported appeal from an order

granting a preliminary injunction is whether the appellant has been deprived of any substantial right which might be lost should the order escape appellate review before final judgment.

*A.E.P. Indus., Inc. v. McClure,* 308 N.C. 393, 400, 302 S.E.2d 754, 759 (1983) (citation and internal quotation marks omitted); *see also Bessemer City Express, Inc. v. City of Kings Mountain*, 155 N.C. App. 637, 639, 573 S.E.2d 712, 714 (2002); *Little v. Stogner*, 140 N.C. App. 380, 383, 536 S.E.2d 334, 336 (2000) ("For a 'defendant to have a right of appeal from a mandatory preliminary injunction, 'substantial rights' of the appellant must be adversely affected.'" (quoting *Dixon v. Dixon*, 62 N.C. App. 744, 744, 303 S.E.2d 606, 607 (1983)).

A substantial right is affected when the trial court's order prohibits the State from enforcing the law. *Beason v. State Dep't of the Sec'y of State*, ___ N.C. App. ___, ___, 743 S.E.2d 41, 44–45 (2013) ("[T]he trial court found that respondent was improperly interpreting statutes it is responsible for enforcing. Thus, we conclude that respondent suffers the risk of injury if we do not consider the merits of this interlocutory appeal. Therefore, we deny petitioner's motion to dismiss."); *Johnston v. State*, ___ N.C. App. ___, ___, 735 S.E.2d 859, 864 (2012), *writ allowed*, *review on additional issues denied*, 366 N.C. 562, 738 S.E.2d 360

(2013) and *appeal dismissed*, 366 N.C. 562, 738 S.E.2d 361 (2013) and *aff'd*, ___ N.C. App. ___, 749 S.E.2d 278 (2013).

Sheriff Brown argues that his ability to enforce the law is impeded by the trial court's grant of a preliminary injunction, and points our attention to *Rockford-Cohen Grp., LLC v. N.C. Dep't of Ins.*, ___ N.C. App. ___, 749 S.E.2d 469 (2013), which stated that "[w]hen an agent of the State that is charged with enforcing statutes chooses to appeal rulings limiting the enforcement of those statutes, the right to enforce the statute is substantial and the rulings are immediately appealable." *Id.* at ___, 749 S.E.2d at 471.

*Rockford* ultimately held that, because the defendant was not a state agency or agent of the State charged with enforcing the statutes, a substantial right was not affected. *Id.* at ___, 749 S.E.2d at 472. This Court relied on *Johnston* and *Gilbert v. N.C. State Bar*, 363 N.C. 70, 76–77, 678 S.E.2d 602, 606 (2009) for this proposition. This Court in *Johnston* held

> that the State has a substantial right to
> enforce the criminal laws of North Carolina
> and that this right is affected by a ruling
> declaring a statute, duly enacted by the
> General Assembly, to be unconstitutional. The
> State has also demonstrated that the
> deprivation of that substantial right will
> potentially work injury if not addressed
> before appeal from a final judgment. The
> trial court's judgment prohibits the State

> from prosecuting plaintiff for possession of a firearm. Further, it casts doubt upon every prosecution by the State throughout North Carolina under Article 54A of Chapter 14 of the General Statutes.

*Johnston*, ___ N.C. App. at ___, 735 S.E.2d at 864.

Here, the trial court's grant of preliminary injunction violated the substantial right of Sheriff Brown in its sixth conclusion of law:

> 6. The *Gift Surplus System v1-01.1* and the Gift Surplus computer kiosk promote the sale of products through a lawful sweepstakes under North Carolina law.

In essence, this conclusion of law determines that these particular kiosks fit within the statutory framework and does so unnecessarily at the preliminary injunction stage. In *Beason*, this Court held that "[t]he substantial basis of this appeal involves *the trial court's order concluding that the alleged violations respondent fined petitioner for were not actually violations*." *Beason*, ___ N.C. App. at ___, 743 S.E.2d at 45 (emphasis added). Here, the trial court does the same thing, since it declares that Plaintiffs were operating a "lawful sweepstakes" and, thus, finds that the Sheriff threatened to prosecute actions that were not actually violative of the statutes. This broad wording in the sixth conclusion of law goes much further than the equitable consideration of "likely to prevail on the merits." Instead, this

conclusion of law makes a declaration concerning the lawfulness of these kiosks and would "cast doubt upon every prosecution by the State throughout North Carolina . . . ." *Johnston*, ___ N.C. App. at ___, 735 S.E.2d at 864.

Similarly, in the decretal section of the order, the trial court ordered that "[t]he Preliminary Injunction . . . is specifically enforceable in those Onslow County places which are validly operating four or less *Gift Surplus System v1-01.1*/Gift Surplus computer kiosks at one location or on one site." The trial court's use of "validly" within the preliminary injunction, similar to its use of "lawful" in its sixth conclusion of law, exceeds the scope of a preliminary injunction, as use of the term "valid" may imply within the preliminary injunction that Plaintiff's kiosks are "legally sufficient" within the applicable statutes. Black's Law Dictionary 1690 (9th ed. 2009). Such a conclusion would also cast doubt on prosecutions undertaken by Sheriff Brown and impede his ability to enforce the law.

As these portions of the preliminary injunction go beyond maintaining the status quo by declaring that Plaintiffs' conduct was *lawful* or *valid*, these portions affect Sheriff Brown's substantial right to enforce the laws of North Carolina. Thus, we exercise jurisdiction for the limited purpose of vacating the sixth

conclusion of law in its entirety and striking the word "validly" from the third item in the decretal section of the preliminary injunction.

The remainder of the preliminary injunction does not implicate a substantial right in enforcing the statutes and simply maintained the status quo pending a trial on the merits. Sheriff Brown was prohibited from enforcing certain statutes listed in the decretal section of the order (N.C. Gen. Stat. §§ 14-292, 14-293, 14-301, 14-306.1A, and 14-306.4). Additionally, the preliminary injunction was limited in its scope: the bar against enforcement extends only to "those Onslow County places which are . . . operating four or less Gift Surplus System v1-01.1/Gift Surplus computer kiosks at one location or on one site." The order also has no effect "on any individuals or entities who are not a party hereto, or on the parties hereto upon the trial or ultimate disposition of this matter." Simply, Sheriff Brown was not enjoined from enforcing the criminal laws of North Carolina by the remainder of the trial court's preliminary injunction; Sheriff Brown was enjoined from enforcing certain criminal laws *against parties to the litigation* until the resolution of this case.[3] The

---

[3] This Court has found that enforcing the statutes against an *individual* affects a substantial right warranting immediate review, but has done so with permanent injunctions or final orders

remainder of the preliminary injunction preserves the status quo and "all parties remain free to fully litigate the merits of the case in the correct procedural context before the trial court . . . ." *CB & I Constructors, Inc. v. Town of Wake Forest*, 157 N.C. App. 545, 550, 579 S.E.2d 502, 505 (2003). The remainder of the preliminary injunction does not affect a substantial right. As the remainder does not affect a substantial right, we do not have jurisdiction to consider this interlocutory appeal, so the remainder of Sheriff Brown's appeal is dismissed.

We next turn to the justiciability argument advanced by Sheriff Brown in opposition to Plaintiffs' request for a declaratory judgment.

## C. Justiciability of Declaratory Judgment Claim

The North Carolina Declaratory Judgment Act provides that

> Any person interested . . . whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the

---

concerning enforcement of a particular statute or regulation. *See, e.g.*, *Gilbert*, 363 N.C. at 75, 678 S.E.2d at 605 ("Although we express no opinion as to the merits of defendant's *Gilbert III* complaint, we note that the trial court order from which defendant appeals includes a *permanent injunction* enjoining defendant from prosecuting *Gilbert III*." (emphasis added)); *Beason*, ___ N.C. App. at ___, 743 S.E.2d at 44–45 (considering an order that decided some of the petitioner's claims and made definite statements that the petitioner's actions were not violations of certain lobbying laws that respondent was responsible for enforcing).

> instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder.

N.C. Gen. Stat. § 1-254 (2013). Further, N.C. Gen. Stat. § 1-253 (2013) provides trial courts with the "power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed."

Our Supreme Court has "required that an actual controversy exist both at the time of the filing of the pleading and at the time of hearing" in declaratory judgment actions. *Sharpe v. Park Newspapers of Lumberton, Inc.*, 317 N.C. 579, 585, 347 S.E.2d 25, 30 (1986). Without an "actual controversy between the parties," jurisdiction does not attach under the Declaratory Judgment Act. *Fabrikant v. Currituck Cnty.*, 174 N.C. App. 30, 44, 621 S.E.2d 19, 29 (2005). An "actual controversy" must be more than a "mere difference of opinion between the parties" and this Court lacks the authority to render an advisory opinion that "the parties might, so to speak, put on ice to be used if and when occasion might arise." *Id.* (citations and quotation marks omitted). However,

> [a]lthough a declaratory judgment action must involve an actual controversy between the parties, plaintiffs are not required to allege or prove that a traditional cause of action exists against defendants in order to establish an actual controversy. A

> declaratory judgment should issue (1) when it will serve a useful purpose in clarifying and settling the legal relations at issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.

*Goldston*, 361 N.C. at 33, 637 S.E.2d at 881 (citations, quotation marks, and alterations omitted); *see also Wake Cares, Inc., et al. v. Wake Cnty Bd of Educ.*, 190 N.C. App. 1, 12, 660 S.E.2d 217, 224 (2008), *aff'd*, 363 N.C. 165, 675 S.E.2d 345 (2009) (holding that an actual controversy existed where plaintiffs, who were not charged with or threatened to be charged with a crime, were affected by several statutes and where a declaratory judgment "would terminate and afford relief from the uncertainty, insecurity, and controversy currently existing").  Ultimately, plaintiffs in declaratory judgment actions are "not required to sustain actual losses in order to make a test case[,]" since that "'requirement would thwart the remedial purpose of the Declaratory Judgment Act.'"  *Charlotte-Mecklenburg Hosp. Auth. v. N.C. Indus. Comm'n*, 336 N.C. 200, 214, 443 S.E.2d 716, 725 (1994), *superseded by statute on other grounds as stated in Mehaffey v. Burger King*, ___ N.C. ___, ___, 749 S.E.2d 252, 256 (2013) (quoting *Bland v. City of Wilmington*, 278 N.C. 657, 659, 180 S.E.2d 813, 815 (1971)).

Plaintiffs seek to determine whether the software and kiosks they operate comply with N.C. Gen. Stat. §§ 14-292, 14-293, 14-

301, 14-306.1A, and 14-306.4 (2013), which regulate electronic sweepstakes machines. Plaintiffs do not seek to determine the criminal culpability of their potential customers, and the courts retain the ability to grant a declaratory judgment when a "questioned statute relates to penal matters." *Jernigan v. State*, 279 N.C. 556, 561, 184 S.E.2d 259, 263-64 (1971). Simply put, "[w]hen a plaintiff has a property interest which may be adversely affected by the enforcement of the criminal statute, he may maintain an action under the Declaratory Judgment Act to determine the validity of the statute in protection of his property rights." *Id.* at 561, 184 S.E.2d at 264; *see also Calcutt v. McGeachy*, 213 N.C. 1, 2, 195 S.E. 49, 49 (1938) (allowing jurisdiction for a declaratory judgment action to test the constitutionality of a criminal statute "prohibiting the manufacture, sale, possession, and use of gambling devices").

The record tends to show a conflict between Sheriff Brown's interpretation and Plaintiff's interpretation of the relevant statutes. Sheriff Brown sent an innocent owner letter declaring that the machines were illegal, while Plaintiffs countered with expert testimony asserting that the machines complied with the State's recent statutory changes. A declaratory judgment would help clarify the "legal relations at issue" and would remove

uncertainty from Plaintiffs' continuing business interests.

Sheriff Brown argues that "there is no actual controversy existing at the time of the hearing[.]" This argument is premised on (a) Sheriff Brown having seized kiosks at a Rhodestown location rather than where Sandhill's owner believed the machines actually were, which was in the Town of Holly Ridge, and (b) Sheriff Brown having removed the kiosks from the Rhodestown location prior to the hearing on the motion to dismiss. Sheriff Brown cites *Fabrikant* for the proposition that the actual controversy must exist "at the time of the filing of the pleading and at the time of hearing." *Fabrikant*, 174 N.C. App. at 44, 621 S.E.2d at 29.

However, Sheriff Brown's office, through the transmission of the innocent owner letter, expressed doubts about the legality of "several video gaming machines associated with the web-site known as www.gift-Surplus.com." The hearing itself centered on the conflict concerning whether the kiosks at issue were illegal and the uncertainty concerning the legality of these kiosks ultimately impacts Plaintiffs' ability to operate a business going forward. Additionally, Plaintiffs alleged in their complaint that, since Sheriff Brown issued the innocent owner letter, existing retail outlets that used Plaintiffs' products had removed the kiosks or chosen not to use the kiosks due to the uncertainty surrounding

their legality. From the foregoing, it is clear that a justiciable actual controversy, as required by the Declaratory Judgment Act, exists. Accordingly, the trial court's exercise of jurisdiction over the declaratory judgment claim was proper.

Because we (a) hold that Sheriff Brown is not entitled to the defense of sovereign immunity on the Rule 12 motions, (b) dismiss Sheriff Brown's appeal of the trial court's grant of a preliminary injunction in part and strike portions of the preliminary injunction in part, and (c) find an actual case or controversy existed, we do not address Sheriff Brown's remaining arguments on appeal.

### III. Conclusion

In conclusion, (i) we hold that the trial court's denial of Sheriff Brown's motion to dismiss affected a substantial right; (ii) we affirm the trial court's order denying Sheriff Brown's motion to dismiss; (iii) we exercise limited jurisdiction to vacate portions of the preliminary injunction which exceed the scope of a preliminary injunction; and (iv) we dismiss Sheriff Brown's appeal of the trial court's grant of a preliminary injunction as interlocutory and not affecting a substantial right.

AFFIRMED in part, VACATED in part, and DISMISSED in part.

Judge ELMORE concurs.

Judge ERVIN dissents in a separate opinion.

NO. COA14-85

NORTH CAROLINA COURT OF APPEALS

Filed: 5 September 2014

SANDHILL AMUSEMENTS, INC. AND GIFT
SURPLUS, LLC,
    Plaintiffs,

v.                                                    Onslow County
                                                      No. 13 CVS 3705

SHERIFF OF ONSLOW COUNTY, NORTH
CAROLINA, ED BROWN, in his official
capacity; and DISTRICT ATTORNEY FOR THE
FOURTH PROSECUTORIAL DISTRICT OF THE
STATE OF NORTH CAROLINA, ERNIE LEE, in
his official capacity,
    Defendants


    ERVIN, Judge, dissenting.


    Although I agree with my colleagues concerning the proper

resolution of Defendant's challenge to the denial of his motion to

dismiss based upon governmental immunity and justiciabiity

grounds, I am unable to agree with their determination that a

portion of Defendant's appeal from the issuance of the preliminary

injunction did not affect a substantial right and is not subject

to immediate appellate review in its entirety.  In addition, after

evaluating the validity of Defendant's challenge to the

preliminary injunction on the merits, I believe that the trial

court erred by issuing the preliminary injunction and that the

portion of the trial court's order preliminarily enjoining

Defendant from engaging in certain enforcement-related activities

should be reversed in its entirety. As a result, I concur in the Court's opinion in part and dissent from the Court's opinion in part.

## Appealability

As a general proposition, "there is no right of immediate appeal from interlocutory orders and judgments," *Travco Hotels, Inc. v. Piedmont Natural Gas Co., Inc.*, 332 N.C. 288, 291, 420 S.E.2d 426, 428 (1992) (citing *Goldston v. American Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990)), such as the one at issue here. However, immediate appellate review of interlocutory orders is available "when the trial court enters a final judgment as to one or more, but fewer than all, claims or parties and certifies there is no just reason for delay" pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), or when "the [interlocutory] order affects a substantial right under" N.C. Gen. Stat. § 1-277(a) and N.C. Gen. Stat. § 7A-27(b)(3). *Sharpe v. Worland*, 351 N.C. 159, 162, 522 S.E.2d 577, 579 (1999) (citing *DKH Corp. v. Rankin-Patterson Oil Co.*, 348 N.C. 583, 585, 500 S.E.2d 666, 668 (1998), and *Oestreicher v. American Nat'l Stores*, 290 N.C. 118, 121-22, 225 S.E.2d 797, 800 (1976)). In view of the fact that the trial court did not include, and could not properly have included, a certification pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), in

its order, the only basis upon which this Court might have jurisdiction over Plaintiff's appeal from that portion of the trial court's order preliminarily enjoining Defendant from engaging in certain enforcement-related activities is in the event that that portion of the trial court's order affects a substantial right.

"The 'substantial right' test for appealability is more easily stated than applied." *Bailey v. Goode*, 301 N.C. 205, 210, 270 S.E.2d 431, 434 (1980) (citing *Waters v. Qualified Personnel, Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978)). An interlocutory order "affects a substantial right" for purposes of N.C. Gen. Stat. § 1-277(a) and N.C. Gen. Stat. § 27(b)(3) in the event that it "deprive[s] the appealing party of a substantial right which will be lost if the order is not reviewed before a final judgment is entered." *Cook v. Bankers Life & Cas. Co.*, 329 N.C. 488, 491, 406 S.E.2d 848, 850 (1991) (citing *Waters*, 294 N.C. at 207, 240 S.E.2d at 343). "Essentially a two-part test has developed--the right itself must be substantial and the deprivation of that substantial right must potentially work injury . . . if not corrected before appeal from final judgment." *Goldston*, 326 N.C. at 726, 392 S.E.2d at 736. A "substantial right" is "'a legal right affecting or involving a matter of substance as distinguished from matters of form: a right

materially affecting those interests which a [litigant] is entitled to have preserved and protected by law: a material right.'" *Oestreicher*, 290 N.C. at 130, 225 S.E.2d at 805 (quoting *Webster's Third New International Dictionary* 2280 (1971)). "Whether an interlocutory ruling affects a substantial right requires consideration of 'the particular facts of that case and the procedural context in which the order from which appeal is sought was entered.'" *N.C. Dep't. of Transp. v. Rowe*, 351 N.C. 172, 175, 521 S.E.2d 707, 709 (1999) (quoting *Waters*, 294 N.C. at 208, 240 S.E.2d at 343)).

In the decretal paragraphs contained in its order, the trial court stated, in pertinent part, that:

> 2. That Plaintiffs' Motion for Preliminary Injunction should be and hereby is GRANTED, and that Defendant Ed Brown, Sheriff of Onslow County is hereby:
>
> a. Restrained and enjoined from using [N.C. Gen. Stat. §§] 14-292, 14-293, 14-301, 14-306.1A, and 14-306.4 to prohibit the Plaintiffs from displaying, selling, operating or promoting the *Gift Surplus System v1-01.1[]* and the Gift Surplus computer kiosk and sweepstakes promotion of the www.giftsurplus.com website and gift cards; and
>
> b. Restrained and enjoined from compelling or attempting to compel, coerce or persuade the Plaintiffs to

> remove the *Gift Surplus System v1-01.1* and the Gift Surplus computer kiosks and equipment associated with the kiosks and sweepstakes from any retail establishment in Onslow County; and
>
> c.   Restrained and enjoined from citing or prosecuting the Plaintiffs for criminal administrative offenses or violations by reason of such party's display, sale, operation, or promotion of the *Gift Surplus System v1-01.1* and the Gift Surplus computer kiosks and sweepstakes promotions of the www.gift-surplus.com website and gift cards in Onslow County.
>
> 3.   The Preliminary Injunction set out in [Paragraph No. 2] above is specifically enforceable only in those Onslow County places which are validly operating four or less *Gift Surplus System v1-01.1*/Gift Surplus computer kiosks at one location or on one site.

In other words, the clear import of the preliminary injunction provisions contained in the trial court's order was to prevent Defendant and his agents from taking any steps to enforce the provisions of N.C. Gen. Stat. §§ 14-292, 14-293, 14-301, 14-306.1A, and 14-306.4 against the display, sale, operation, promotion of the equipment, computer programs, and websites in sites located in Onslow County at which no more than four kiosks were present.  As a result, every provision of the preliminary injunction had the effect of prohibiting Defendant from enforcing certain statutory

provisions as he understood them against Plaintiffs' equipment and activities as the activities in question occurred at locations in Onslow County at which no more than four kiosks were present.

As I read the relevant decisions, this Court has recognized that the entry of a preliminary injunction precluding a state or local agency from enforcing the law affects a substantial right and is immediately appealable. *Rockford-Cohen Group, LLC v. N.C. Dep't. of Ins.*, __ N.C. App. __, __, 749 S.E.2d 469, 471 (2013) (stating that, "[w]hen an agency of the State that is charged with enforcing statutes chooses to appeal rulings limiting the enforcement of those statutes, the right to enforce the statute is substantial, and the rulings are immediately appealable") (citing *Johnston v. State*, __ N.C. App. __, __, 735 S.E.2d 859, 864 (2012) (allowing an immediate appeal from an interlocutory order declaring that a statute, as applied to the plaintiff, was unconstitutional since that decision had the effect of permanently "enjoin[ing] the State from prosecuting plaintiff for violations of the" relevant statutory provisions), *disc. review concerning additional issues denied*, 366 N.C. 562, 738 S.E.2d 360 (2013), *appeal dismissed*, 366 N.C. 562, 738 S.E.2d 361 (2013), *aff'd*, __ N.C. App. __, 749 S.E.2d 278 (2013), and *Gilbert v. N.C. State Bar*, 363 N.C. 70, 76-77, 678 S.E.2d 602, 606 (2009) (allowing an

immediate appeal from an interlocutory order that "enjoin[ed] defendant from prosecuting" a related proceeding); *see also Beason v. N.C. Dep't. of Sec'y. of State*, __ N.C. App. __, __, 743 S.E.2d 41, 44-45 (2013) (stating that, "since respondent is charged with investigating violations of and enforcing" certain provisions of the lobbying laws, since "respondent's right to carry out these duties is substantial," and since "respondent's ability to carry out its duties requires that it be able to act timely on allegations it believes constitute violations," the respondent's appeal from an interlocutory order enjoining the enforcement of those lobbying laws against the petitioner was subject to immediate appellate review). I find no basis for departing from this well-established line of precedent, as the Court's opinion appears to do, in this case. As a result, given that the preliminary injunction issued by the trial court prohibits Defendants from taking action to enforce the relevant gaming machine statutes as he understands them, I would hold that this Court has jurisdiction over Defendant's appeal from the issuance of the preliminary injunction and proceed to address the validity of Defendant's challenge to that portion of the trial court's order on the merits.

In its opinion, the Court concludes that a portion of the trial court's preliminary injunction affects a substantial right

and should be invalidated and that a portion does not affect a substantial right and should remain undisturbed. More specifically, the Court concludes that the sixth conclusion of law contained in the trial court's order should be vacated and that "validly" should be stricken from the third decretal paragraph on the grounds that these portions "go beyond maintaining the status quo." In reaching this conclusion, the Court relies on the Supreme Court's statement in *A.E.P. Indus., Inc. v. McClure*, 308 N.C. 393, 400, 302 S.E.2d 754, 759 (1983) (citation and quotation marks omitted), to the effect that "[t]he purpose of a preliminary injunction is ordinarily to preserve the *status quo* pending trial on the merits" and concludes that, because the relevant portions of the preliminary injunction order do more than serve the purpose of maintaining the status quo, they "affect Sheriff Brown's substantial right to enforce the laws of North Carolina" and should be invalidated on appeal. On the other hand, the Court appears to hold that the remainder of the preliminary injunction is so limited in scope and effect that it does not affect a substantial right and is not subject to immediate appellate review. I do not believe that the Court's approach to the resolution of this issue has any support in our "substantial right" jurisprudence as explained in decisions such as *Gilbert*, *Johnston*, and *Beason*.

As an initial matter, the Court's analysis seems to indicate that the extent to which Defendant was entitled to appeal from the issuance of the preliminary injunction hinges upon the validity of the injunction itself.[4]  In other words, the Court seems to conclude that Defendant is entitled to immediate appellate review of the preliminary injunction to the extent, and only to the extent, that the trial court exceeded its authority in issuing the injunction in the first place.  I see no basis in our "substantial right" jurisprudence for equating a litigant's ability to appeal from an interlocutory order with the litigant's ability to prevail on the merits in the event that such an appeal was to be entertained. Instead, the extent to which this Court has jurisdiction to entertain an immediate appeal from an interlocutory order and the extent to which the trial court erred by entering the interlocutory order in question constitute two completely different issues that

---

[4]This aspect of the Court's analysis is similar to the argument advanced in Plaintiff Sandhill Amusements' brief, which suggests that the preliminary injunction does not affect a substantial right on the theory that, since Plaintiffs' equipment and activities do not violate the applicable gambling statutes, Defendant has not been enjoined from properly enforcing the law. However, as is discussed in more detail in the text, the extent to which the substance of a party's position on the merits is correct and the extent to which that party has a right to seek immediate appellate review from an interlocutory order are two separate, and essentially unrelated, questions.

have little or no relation to each other in the preliminary injunction context.

Secondly, the Court's appealability analysis appears to hinge on the assumption that we have jurisdiction over Defendant's appeal from the trial court's order to the extent, and only to the extent, that the trial court's order disturbed the status quo. More specifically, the Court states that the portion of the preliminary injunction that it does not believe to be subject to appellate review on an interlocutory basis "does not implicate a substantial right in enforcing the statutes and simply maintained the status quo pending a trial on the merits." Aside from the fact that the extent to which a particular order maintains or disturbs the status quo is not the sum total of the test employed for evaluating the merits of a trial court's decision to issue a preliminary injunction, I am unable to find any support in our "substantial right" jurisprudence for the use of such a standard. Simply put, I am not aware of any decision that finds or declines to find the existence of a "substantial right" sufficient to support the maintenance of an appeal from an interlocutory order based upon the extent to which the underlying order preserves or disturbs the status quo. For that reason, I do not believe that the Court's reference to the impact of the underlying preliminary injunction

on the status quo has any bearing on Defendant's right to immediate appellate review of the preliminary injunction.

Finally, the Court appears to conclude that *Gilbert*, *Johnston*, and *Beason* only authorize interlocutory appeals from orders that permanently, rather than preliminarily, enjoin state or local agencies or officials from enforcing the law against specific litigants.[5] However, the Court's interpretation of these cases is inconsistent with our statement of the applicable legal principle in *Rockford-Cohen*, a case that involved a challenge to the issuance of a preliminary injunction; has no support in their underlying logic, which assumes that an order precluding a state

---

[5]As we have already noted, the Court suggests that the fact that the preliminary injunction merely affects Defendant's ability to enforce a limited number of statutory provisions against a limited number of persons in a limited geographic area militates in favor of a finding that a portion of the preliminary injunction does not affect a substantial right and appears to read *Gilbert* as distinguishing between injunctions that affect a defendant's ability to enforce the laws generally and injunctions that affect a defendant's ability to enforce the laws against specific litigants. A similar argument resting on the scope of the preliminary injunction is advanced in the briefs submitted by Plaintiff Gift Surplus and Plaintiff Sandhill Amusements. However, since the orders at issue in *Gilbert*, *Beason*, and *Johnston* all precluded the relevant agency or official from enforcing specific statutory provisions against specific litigants in specific contexts, it is clear that such scope-related arguments have no support in our "substantial right" jurisprudence and that the Court's emphasis upon these factors in declining to review a portion of the preliminary injunction rests upon our misapprehension of our "substantial right" jurisprudence.

or local official from enforcing the law affects a substantial right without in any way suggesting the existence of a temporal limitation on the applicability of that principle; and ultimately rests upon stray references to the permanence of the injunctions at issue in those cases that had no apparent impact upon the reasoning actually employed in holding that the orders challenged in those case were immediately appealable.[6]  As a result, since the preliminary injunction at issue in this case prohibits a state or local official from enforcing the law against Plaintiffs, since our decisions clearly allow immediate appellate review of such

---

[6]To be sure, *Gilbert* notes that the order from which the defendant appealed permanently enjoined it from prosecuting a separate proceeding.  *Id.* at 75, 678 S.E.2d at 605.  Similarly, the orders at issue in *Beason*, __ N.C. App. at __, 743 S.E.2d at 44-45, and *Johnston*, __ N.C. App. at __, 735 S.E.2d at 864, involve permanent orders rather than preliminary injunctions.  However, nothing in the opinions in question in any way suggests that the fact that the injunctions or orders at issue in those cases were permanent rather than preliminary had any bearing on the Court's appealability analysis.  Instead, the Court simply held that an injunction or order that precluded a state or local official from enforcing the laws affected a substantial right and was immediately appealable without in any way suggesting that a different principle would apply to preliminary, as compared to permanent, injunctions or orders.  As a result, while the Court has correctly identified a factual distinction between the relevant cases and this case, the logic upon which the Court based those decisions applies equally to permanent and preliminary injunctions or orders and nothing in the opinions in those cases in any way suggests that the outcome would have been different in the event that the bar to further enforcement had been preliminary rather than permanent in nature.

orders, and since the logic upon which the Court relies in reaching a different conclusion rests upon a misapprehension of our prior decisions concerning appealability issues, I would hold that this Court has jurisdiction over the entirety of Defendant's challenge to the preliminary injunction and will now, in light of that conclusion, address Defendant's challenge to the issuance of the preliminary injunction on the merits.

## Validity of the Preliminary Injunction

"[A preliminary injunction] will be issued only (1) if a plaintiff is able to show likelihood of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation." *Ridge Cmty. Investors, Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977). "[O]n appeal from an order of superior court granting or denying a preliminary injunction, an appellate court is not bound by the findings, but may review and weigh the evidence and find facts for itself." *A.E.P. Indus.*, 308 N.C. at 402, 302 at 754, 760 (citation omitted). Although appellate courts review orders granting or denying preliminary injunctions using a *de novo* standard of review, we have also noted that "a trial court's ruling on a motion for a

preliminary injunction is presumed to be correct, and the party challenging the ruling bears the burden of showing it was erroneous." *Analog Devices, Inc. v. Michalski*, 157 N.C. App. 462, 465, 579 S.E.2d 449, 452 (2003) (citation omitted). For purposes of this case, the ultimate issue raised by Defendant's challenge to the validity of the preliminary injunction is whether Plaintiffs have shown a likelihood of success on the merits and whether they are likely to sustain an irreparable injury in the event that they are deprived of injunctive relief prior to the completion of a trial on the merits.[7]

According to N.C. Gen. Stat. § 14-306.4(b), "it shall be unlawful for any person to operate, or place into operation, an electronic machine or device to . . . [c]onduct a sweepstakes through the use of an entertaining display, including the entry process or the reveal of a prize." An "electronic machine or device" for purposes of N.C. Gen. Stat. § 14-306.4(b) is a piece of equipment "that is intended to be used by a sweepstakes entrant, that uses energy, and that is capable of displaying information on a screen or other mechanism." N.C. Gen. Stat. § 14-306.4(a)(1).

---

[7]In view of the fact that Defendant has not argued that Plaintiffs have shown the existence of the necessary irreparable injury, we will focus our discussion in the text on the extent to which Plaintiffs have shown that they are likely to succeed on the merits at trial.

Similarly, an "entertaining display" is defined as "visual information, capable of being seen by a sweepstakes entrant, that takes the form of actual game play, or simulated game play," including "[a] video game based on or involving the random or chance matching of different pictures, words, numbers, or symbols not dependent on the skill or dexterity of the player" and "[a]ny . . . video game not dependent on skill or dexterity that is played while revealing a prize as the result of an entry into a sweepstakes." N.C. Gen. Stat. § 14-306.4(a)(3). Finally, a "sweepstakes" is defined as "any game, advertising scheme or plan, or other promotion, which, with or without payment of any consideration, a person may enter to win or become eligible to receive any prize, the determination of which is based upon chance." N.C. Gen. Stat. § 14-306.4(a)(5). As a result, given that the equipment and activities protected by the preliminary injunction clearly involve the use of electronic devices to engage in or simulate game play based upon which a participant may win or become eligible to win a prize, the only basis upon which Plaintiffs' equipment and activities can avoid running afoul of N.C. Gen. Stat. § 14-306.4(b) is in the event that the game or simulated game involved is "dependent on skill or dexterity."

In its order, the trial court found as a fact that:

19. Nick Farley . . . testified on behalf of the Plaintiffs. He was proffered and accepted as an expert witness in the field of gaming and software.[8]

20. Prior to trial, Farley conducted a review and examination of the computer software program, *Gift Surplus System v1-01-1*, developed by Gift Surplus, as well as the Gift Surplus computer kiosk, which resulted in a written report dated April 16, 2013 (a copy of which was received into evidence).

21. In Farley's uncontroverted opinion as evidenced by his report and testimony, the computer software program that operates the distribution of Gift Surplus sweepstakes entries and the video games used to reveal winning sweepstakes entries on the Gift Surplus Kiosk is a sweepstakes which operates in compliance with the generally accepted guidelines for operating sweepstakes in North Carolina and many other jurisdictions in the United States.

22. Farley testified that, based on his expertise honed through years of experience and his thorough knowledge of the gaming machines and software, he understands the

---

[8]At this point, the trial court stated in Footnote No. 5 to its order that: "Nick Farley is the owner of Nick Farley & Associates, Inc., d/b/a Eclipse Compliance Testing, based in Salon, Ohio. This is one of three firms in the country that provides technical consulting services for compliance of gaming machines with state and federal regulations. Eclipse Compliance Testing consults with and has been hired by law enforcement, tribal and government regulatory agencies in 245 jurisdictions, as well as by regulated device manufacturers, regarding device classification and regulatory compliance. The firm has been involved solely in the business of compliance and testing from 2000 to present. Mr. Farley has testified as an expert witness in these matters in federal, state and tribal courts both as a witness for the government and for the defense."

> meaning and interpretation of the words "skill" and "dexterity" as used by the industry in North Carolina and many other jurisdictions.[9]
>
> 23. In Farley's uncontroverted opinion as evidenced by his report and testimony, the *Gift Surplus System v1-01-1*, developed by Gift Surplus and used in the kiosk (Plaintiff's Exhibit 1) is dependent on skill or dexterity in order to realize any prize or entitlement from the sweepstakes entries.[10]

Based upon these and other findings, the trial court concluded as a matter of law that:

> 6. The *Gift Surplus System v1-01-1* and the Gift Surplus computer kiosk promote the

---

[9]At this point, in Footnote No. 6 to its order, the trial court stated that: "In preparation for his testimony, Nick Farley was provided by counsel the definition of 'skill or dexterity' in statutes in the United States. As noted in his testimony, Farley's testimony was based partially upon the statutory definitions used around the country."

[10]At this point, in Footnote No. 7 to its order, the trial court stated that: "Farley's report found that a participant's decision can be viewed as a strategic choice or tactic which will evolve into confidence with practice and experience. Participants familiar with revealing sweepstakes entries through the game theme will develop an aptitude or ability to quickly recognize the correct reel and the correct skill moves to reveal a prize winning sweepstakes entry. Experienced participants will demonstrate fluency in the execution of the learned past of recognizing and selecting the correct reel and making the correct skill move to reveal a potential winning outcome. Further, if the participant takes no action to effectuate the outcome of the game, the participant will not be able to realize any potential prize associated with the sweepstakes entry because these systems will never display a winning sequence on the first sweepstakes entry presented. Therefore, the kiosk games, per Farley, are dependent on skill or dexterity and not the element of chance."

sale of products through a lawful sweepstakes under North Carolina law.

. . . .

8. There is a likelihood that the Plaintiffs will prevail in that:

a. *Gift Surplus System v1-01.1* and the Gift Surplus computer kiosk operated by Gift Surplus, LLC, conduct a valid sweepstakes within the applicable law.

b. The *Gift Surplus System v1-01.1* and the Gift Surplus computer kiosk operated by Gift Surplus, LLC, in promotion of their sweepstakes are dependent on skill or dexterity as required under North Carolina statutory law.

c. The *Gift Surplus System v1-01.1* and the Gift Surplus computer kiosk operated by Gift Surplus, LLC, is a lawful promotional device for the sale of gift certificates and operation of their promotional sweepstakes.

As a result, the trial court determined that Defendant should be enjoined from taking any action against Plaintiffs' equipment and activities based upon a determination that the extent to which a person received a prize for participating in the sweepstakes hinged upon that person's skill or dexterity.

The trial court's conclusion that Plaintiffs' equipment and activities involved a game whose outcome depended on skill or

dexterity rested upon acceptance of Mr. Farley's testimony to the effect that the outcome of the games played utilizing Plaintiffs' equipment depended on the player's skill or dexterity. Although the term "skill or dexterity" as used in N.C. Gen. Stat. § 14-306.4 has not been statutorily defined, the meaning of the term in question, as used in Article 37 of Chapter 14 of the General Statues, a set of provisions governing gambling-related activities that includes N.C. Gen. Stat. § 14-306.4, has been addressed by this Court. In light of that fact, the trial court should have determined whether Plaintiffs' equipment and activities facilitated a game of "skill and dexterity" or a game of chance based upon the meaning of that term as used in North Carolina gambling-related cases rather than on the basis of the meaning of that term as used in other jurisdictions and in the gaming industry, which is the approach that the trial court found to have been adopted in Mr. Farley's testimony. Thus, in order to determine whether the trial court correctly found that Plaintiffs' equipment and activities were lawful, we must first ascertain the difference between a game of skill and a game of chance as those terms are used in our gambling statutes and then determine which side of the resulting line Plaintiffs' equipment and activities fall on.

In *Collins Coin Music Co. of North Carolina, Inc. v. North Carolina Alcoholic Beverage Control Comm'n*, 117 N.C. App. 405, 408, 451 S.E.2d 306, 308 (1994), *disc. rev. denied*, 340 N.C. 110, 456 S.E.2d 312 (1995), we stated that:

> A game of chance is "such a game as is determined entirely or in part by lot or mere luck, and in which judgment, practice, skill or adroitness have honestly no office at all, or are thwarted by chance." *State v. Eisen*, 16 N.C. App. 532, 535, 192 S.E.2d 613, 615 (1972) (citation omitted). "A game of skill, on the other hand, is one in which nothing is left to chance, but superior knowledge and attention, or superior strength, agility and practice gain the victory." *Id.* at 535, 192 S.E.2d at 615-16 (citation omitted). In *State v. Stroupe*, 238 N.C. 34, 76 S.E.2d 313 (1953), a case involving the legality of the game of pool, our Supreme Court stated:
>
> It would seem that the test of the character of any kind of a game of pool as to whether it is a game of chance or a game of skill is not whether it contains an element of chance or an element of skill, but which of these is the dominating element that determines the result of the game, to be found from the facts of each particular kind of game. Or to speak alternatively, whether or not the element of chance is present in such a manner as to thwart the exercise of skill or judgment.
>
> *Id.* at 38, 76 S.E.2d at 316-317.

In light of this understanding of the meaning of the relevant statutory language, this Court considered whether a video poker game was one of skill or of chance, *id.* at 406, 451 S.E.2d at 307,

and determined that the game in question was one of chance rather than one of skill because, at least in part, almost all of the skill-related elements in an in-person poker game, including the use of psychological factors such as bluffing to prevail over an opponent, were absent from video poker. *Id.* at 408, 451 S.E.2d at 308. In addition, we stated that:

> although a player's knowledge of statistical probabilities can maximize his winnings in the short term, he cannot determine or influence the result since the cards are drawn at random. In the long run, the video game's program, which allows only a predetermined number of winning hands, negates even this limited skill element.

*Id.* at 409, 451 S.E.2d at 308 (internal citation omitted). As a result, the essential difference between a game of skill and a game of chance for purposes of our gambling statutes, including N.C. Gen. Stat. § 14-306.4, is whether skill or chance determines the final outcome and whether chance can override or thwart the exercise of skill.

As was the case with the video poker game at issue in *Collins Coin Music*, the machines and equipment at issue here only permitted a predetermined number of winners. For that reason, a player who plays after the predetermined number of winners has been reached will be unable to win a prize no matter how much skill or dexterity

he or she exhibits.[11]  In addition, use of the equipment at issue here will result in the playing of certain games in which the player will be unable to win anything of value regardless of the skill or dexterity that he or she displays.[12]  Finally, the extent to which the opportunity arises for the "nudging" activity upon which the trial court's order relies in support of its determination that the equipment in question facilitated a game of "skill or dexterity" appears to be purely chance-based.  Although Mr. Farley persuaded the trial court that the outcome of the games facilitated by Plaintiffs' equipment and activities depended on skill or dexterity, the only basis for this assertion was the player's ability to affect the outcome by "nudging" a third symbol in one direction or the other after two matching symbols appeared at random on the screen.  Assuming for purposes of argument that this "nudging" process does involve skill or dexterity, I am unable to see how this isolated opportunity for such considerations to

---

[11]As Mr. Farley indicated, "[s]hould the random distribution of entries cause the payout rate to exceed a predetermined limit, prizes selected for distribution which exceed $200 will be returned to the pool and another prize will be selected to be revealed."

[12]Mr. Farley admitted on cross-examination that a number of screens will offer a "zero value prize" so that the participant cannot win anything of value regardless of his or her actions in the game and that "[w]hich entry is going to come out of the pool is determined by chance."

affect the outcome overrides the impact of the other features which, according to the undisputed evidence, affect and significantly limit the impact of the player's skill and dexterity on the outcome. In light of these inherent limitations on a player's ability to win based upon a display of skill and dexterity, an individual playing the machines and utilizing the equipment at issue simply does not appear to be able to "determine or influence the result over the long haul." *Id.* at 409, 451 S.E.2d at 309 (citation omitted). As a result, for all of these reasons, I am compelled by the undisputed evidence to "conclude that the element of chance dominates the element of skill in the operation" of Plaintiffs' machines, *id.*, a fact that demonstrates that Plaintiff is not likely to succeed on the merits at trial and that the trial court erred by preliminarily enjoining Defendant from enforcing the strictures of N.C. Gen. Stat. § 14-304.6(b) against Plaintiffs. Thus, I believe that the trial court's order should be reversed to the extent that it preliminarily enjoins Defendant from enforcing the provisions of N.C. Gen. Stat. § 14-306.4 against Plaintiffs.[13]

---

[13]As a result of the fact that our resolution of the "skill or dexterity" issue for purposes of N.C. Gen. Stat. § 14-306.4 applies equally to the other statutes that Defendant was enjoined from enforcing against Plaintiffs, we need not separately analyze

## Conclusion

Thus, while I agree with my colleagues that we have jurisdiction over Defendant's challenge to the denial of his dismissal motion and that the trial court properly rejected Defendant's governmental immunity and justiciability challenges to Plaintiffs' complaint, I am unable to agree with their decision that only a portion of the trial court's preliminary injunction order is subject to immediate appellate review and would further conclude, after examining the merits of Defendant's challenge to the preliminary injunction, that, since Plaintiffs did not demonstrate a likelihood of success on the merits at trial, that portion of the trial court's order preliminarily enjoining Defendant from enforcing various statutory provisions against Plaintiffs should be reversed. As a result, I would affirm the trial court's refusal to dismiss Plaintiffs' complaint, reverse the trial court's decision to issue a preliminary injunction against Defendant, and remand this case to the Onslow County Superior Court for further proceedings not inconsistent with this opinion and dissent from the Court's decision to the extent that it reaches a contrary result.

---

the validity of the preliminary injunction under these additional statutory provisions.